[Crim. No. 2543. Fifth Dist. Dec. 31, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM CALBAN, Defendant and Appellant.

[Crim. No. 2544. Fifth Dist. Dec. 31, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
RICARDO SALAS FLORES, Defendant and Appellant.

580

**COUNSEL**

Stuart W. Knight, under appointment by the Court of Appeal, for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Joel Carey and John A. Gordnier, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**FRANSON, J.—**

### Statement of the Case

Appellants were charged by information in count I with the making of a false affidavit concerning a recall petition, in violation of California Elections Code section 29218;[1] in count II with the circulation of a recall petition knowing it to contain false, forged or fictitious names, in violation of California Elections Code section 29217;[2] and in count III with the filing with the county clerk of a recall petition to which was attached false or fraudulent signatures, knowing that the signatures were false or fraudulent, in violation of California Elections Code section 29216.[3]

A jury found appellants guilty on all counts. Thereafter, appellants were sentenced to state prison on count I with execution of sentence stayed for a five-year probationary term on the condition that appellants serve six months in the county jail. As to counts II and III, appellants were sentenced to state prison with execution of the sentences suspended for a five-year probationary period.

### Statement of the Facts

Appellants, members of a Chicano organization, volunteered to circulate petitions seeking the recall of two members of the governing board of the Lamont School District. Appellants consulted an attorney

---

[1] Section 29218 provides: "Every person is punishable by a fine not exceeding five thousand dollars ($5,000), or by imprisonment in the state prison not exceeding two years or in a county jail not exceeding one year, or by both such fine and imprisonment, who makes any false affidavit concerning any initiative, referendum, or recall petition or the signatures appended thereto."

[2] Section 29217 provides: "Every person is punishable by a fine not exceeding five thousand dollars ($5,000), or by imprisonment in the state prison not exceeding two years or in a county jail not exceeding one year, or by both such fine and imprisonment, who circulates or causes to be circulated any initiative, referendum, or recall petition, knowing it to contain false, forged, or fictitious names."

[3] Section 29216 provides: "Every person is punishable by a fine not exceeding five thousand dollars ($5,000), or by imprisonment in the state prison not exceeding two years or in a county jail not exceeding one year, or by both such fine and imprisonment, who files in the office of the clerk or other officer designated by law to receive such filing, any initiative, referendum, or recall petition to which is attached, appended or subscribed any signature which the person filing the petition knows to be false or fraudulent or not the genuine signature of the person whose name it purports to be."

named Robert Olmos about the petitions. Mr. Olmos caused affidavits to be prepared attesting to various facts about the gathering of the signatures and explained the contents of the affidavits to appellants. Appellants signed the affidavits under "penalty of perjury."

The affidavits were prepared in compliance with California Elections Code section 27203 and stated, among other things, that appellants had "circulated the attached petition among voters in said city and saw written the signatures appended to said paper" and "according to [appellants'] best information and belief, each signature is a genuine signature of the person whose name it purports to be, and each signer is a voter of said city." The petitions and the affidavits were filed by appellants with the Kern County elections supervisor.

Several registered voters whose purported signatures appeared on the petitions testified that they had not signed the petition. The elections supervisor testified that approximately 50 signatures were rejected as irregular when compared to signatures on the original affidavits of registration.

Appellants testified that they had read the affidavits which they signed. Appellant Calban indicated that he understood what was meant by that portion of the affidavit stating that he personally observed the signing of the petition and that the only term he had difficulty understanding was "perjury." Appellant Flores testified that he did not "clearly understand" the affidavit, and as to the understanding of the phrase "saw written" he gave equivocal testimony. Calban asserted that he observed the signing of the signatures but admitted that some signatures might have been signed when he was not present. Flores admitted that the petition was out of his hands many times.[4]

Mr. Samaya, a defense witness, indicated that there were occasions when signatures might have been fixed which were not witnessed by appellants.

---

[4]The purpose of showing that the petitions were outside appellants' dominion and control at various times was to show a lack of *knowledge* by appellants that certain signatures had been forged. There is a knowledge requirement in both California Elections Code sections 29216 and 29217; however, no such knowledge requirement is expressed in section 29218.

## Discussion

Appellants contend that the trial court prejudicially erred in failing to instruct the jury that California Elections Code sections 29216, 29217 and 29218 are specific intent crimes. In support of this contention, appellants argue that these offenses charged constitute a form of perjury and that perjury is a specific intent crime. (*People* v. *Walker* (1967) 247 Cal.App.2d 554, 563 [55 Cal.Rptr. 726], holding that a specific intent to swear falsely is essential to a violation of the perjury statute.)

■ Appellants' attempt to analogize their convictions to that of perjury must fail. The Elections Code provisions constitute separate, independent crimes from that proscribed by the perjury statute.[5] (*People* v. *Todd* (1953) 9 Cal.App.2d 237 [49 P.2d 611].) In *Todd* the defendant was indicted for perjury in the making of a false oath to affidavits attached to three petitions circulated by defendant to enable her party to participate in a primary election. The affidavits were expressly sworn to by appellant before a deputy registrar of voters. On appeal she complained of not being prosecuted under California Penal Code section 64b, subdivision 5, the predecessor to Elections Code section 29218. The appellate court rejected this argument, holding that the facts of the case brought it squarely within the provisions of the perjury statute and that it was no defense that the prosecution might have proceeded under another statute. (9 Cal.App.2d at pp. 244-245.)

■ Where a general statute, standing alone, includes the same matter as a special statute, but conflicts with it, the special statute will be considered an exception to the general statute. (*People* v. *Gilbert* (1969) 1 Cal.3d 475, 479 [82 Cal.Rptr. 724, 462 P.2d 580], quoting *In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593].) Here, perjury is the general crime; the Elections Code violations are the special crimes.

■ Moreover, an analysis of Elections Code sections 29216, 29217 and 29218 shows that they are general intent crimes. The gravamen of the crimes is the doing of certain acts—the filing or circulating of recall

---

[5]Penal Code section 118 defines perjury as follows: "Every person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which such an oath may by law be administered, wilfully and contrary to such oath, states as true any material matter which he knows to be false, and every person who testifies, declares, deposes, or certifies under penalty of perjury in any of the cases in which such testimony, declarations, depositions, or certification is permitted by law under penalty of perjury and wilfully states as true any material matter which he knows to be false, is guilty of perjury."

petitions knowing that they contain false signatures (§§ 29216 and 29217), and the making and filing of a false affidavit with knowledge of the falsity of the statements in the affidavit (§ 29218; see *People* v. *Carroll* (1919) 39 Cal.App. 654, 656 [180 P. 49]). A requirement of knowledge is not a requirement that the act be done with any specific intent. (See *People* v. *Faubus* (1975) 48 Cal.App.3d 1, 4-6 [121 Cal.Rptr. 167]; *People* v. *Garcia* (1967) 250 Cal.App.2d 15, 21 [58 Cal.Rptr. 186].) The word "knowing" as used in a criminal statute imports only an awareness of the facts which bring the proscribed act within the terms of the statute. (Pen. Code, § 7, subd. 5.) Thus, the trial court correctly refused to instruct the jury on any requirement of specific intent.

A second issue, not raised by appellants, is whether the trial court committed prejudicial error in failing to instruct the jury *sua sponte* that a violation of Elections Code section 29218 requires proof that the appellants had *knowledge* of the falsity of their affidavits at the time they were made.

Section 29218 on its face, unlike sections 29216 and 29217, does not contain a knowledge requirement. Indeed, when read literally, the statute imposes an absolute criminal liability on a defendant for making a false affidavit regardless of whether he knows of its falsity. Also, an early California appellate decision holds that an indictment is sufficient under former Penal Code section 64b, subdivision 5, the predecessor to 29218, where it alleges that the defendant made the false affidavit and that it was filed. (*People* v. *Carroll, supra,* 39 Cal.App. at p. 656.) For the reasons about to be explained, we decline to follow *People* v. *Carroll* to the extent that it suggests that a person may be guilty of violating section 29218 absent proof that he knowingly made and filed a false affidavit.

In every crime there must exist a union or joint operation of act or conduct and criminal intent or criminal negligence. (Pen. Code, § 20; *People* v. *Vogel* (1956) 46 Cal.2d 798, 801 [299 P.2d 850]; *Morissette* v. *United States* (1952) 342 U.S. 246 [96 L.Ed. 288, 72 S.Ct. 240]; CALJIC No. 3.30.) Normally, persons who commit an act through misfortune or by accident with no evil design, intention or culpable negligence are not criminally responsible for the act. (Pen. Code, § 26, subd. 6.) The only exceptions to this general rule are so-called "public welfare" or "*malum prohibitum*" crimes which are punishable despite the absence of any criminal intent or criminal negligence. (See 1 Witkin, Cal. Crimes, § 62, p. 66; Perkins on Criminal Law (2d ed.) pp. 784-798.) Since a violation of Elections Code section 29218 carries a possible state prison sentence of

up to two years as well as a fine of $5,000, it obviously cannot be treated as a public welfare offense. (See *People* v. *Peabody* (1975) 46 Cal.App.3d 43, 46-47, fn. 1 [119 Cal.Rptr. 780].)

■■ ■■■ Elections Code sections 29216 and 29217 both expressly require knowledge of the falsity of the signatures. Moreover, Elections Code section 29219 proscribes the very same conduct for public officials and employees which section 29218 proscribes for persons in general. Section 29219 contains the knowledge requirement. It provides: "Every public official or employee is punishable by a fine not exceeding five thousand dollars ($5,000), or by imprisonment in the state prison not exceeding two years or in a county jail not exceeding one year, or by both such fine and imprisonment, who *knowingly* makes any false return, certificate or affidavit concerning any initiative, referendum, or recall petition or the signatures appended thereto." (Italics added.) The predecessors to section 29219 also contained a knowledge requirement (see former Elec. Code, § 11647 and former Pen. Code, § 64b, subd. 6).

We see no reason in logic or public policy why the Legislature would intend to apply a higher standard of criminal culpability—i.e., absolute liability for filing a false affidavit regardless of knowledge of the falsity—to private persons as contrasted with public officials and employees. Thus, we conclude that the omission of a knowledge requirement from section 29218 simply was due to legislative oversight, and such a requirement must be implied as part of the statute.[6]

■ In the present case, however, no reversible error was committed by the trial court in not expressly instructing the jury on its own motion concerning the knowledge requirement in section 29218. The trial court gave CALJIC No. 3.30, the proper instruction for general mens rea crimes: "In the crimes charged in the information, there must exist a union or joint operation of act or conduct and criminal intent. To constitute criminal intent it is not necessary that there should exist an intent to violate the law. *Where a person intentionally does that which the law declares to be a crime, he is acting with criminal intent, even though he may not know that his act or conduct is unlawful.*" (Italics added.) The

---

[6]There is another requirement for criminal liability which must be read into section 29218—the use of the false affidavit for some antisocial purpose; the mere making of the affidavit cannot constitute the crime. By analogy to the perjury statute it is reasonable to require that the affidavit must be delivered to another person with the intent that it be uttered or published as true. (Pen. Code, § 124; 38 Cal.Jur.2d, Perjury, § 8, pp. 373-374.) In the present case, as in *People* v. *Carroll, supra,* 39 Cal.App. 654, the affidavit was filed with the county elections supervisor, thus completing the crime.

trial court also instructed the jury in the language of section 29218 which proscribes the making of a *false* affidavit. It is axiomatic that one cannot intentionally make a false affidavit (thus having the requisite general criminal intent) without knowing the affidavit to be false. By instructing the jury on general criminal intent (CALJIC No. 3.30), the jury had before it the question whether appellants had knowledge of the falsity of their affidavits. By finding that appellants had violated section 29218, the jury necessarily resolved the question against appellants.

Because the issue whether appellants knew that their affidavits were false was resolved against them under other proper instructions, there can be no prejudice to appellants in not having the jury expressly instructed on the knowledge requirement of section 29218 (see *People* v. *Sedeno* (1974) 10 Cal.3d 703, 721 [112 Cal.Rptr. 1, 518 P.2d 913]).

The judgments of conviction are affirmed.

Brown (G. A.), P. J., and Thompson, J.,* concurred.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.