[No. F005635. Fifth Dist. Dec. 31, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANK LOPEZ, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts III and IV.

COUNSEL

Kyle Gee, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert D. Marshall and David de Alba, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BALLANTYNE, J.—

### INTRODUCTION

Defendant appeals from a conviction for violating Penal Code sections 211 and 148.

On the evening of January 4, 1985, Kenneth Guinn left the High Hat Bar in Firebaugh. Mr. Guinn noticed a little dog and followed the dog toward a dumpster to feed it a burrito. Three men tackled him. One had a stick. They robbed him of his comb, glasses, wallet and $1.50 in spare change separate from the wallet. Mr. Guinn did not recognize the assailants nor did he see their faces or remember their voices.

Firebaugh Reserve Police Officers Vallejo and Pulido drove past the defendant and two other men standing in front of a donut shop on "O"

Street. They were driving a marked patrol car visible to the three men as the officers drove past. Officer Pulido dropped off Officer Vallejo in an alley around the corner from the shop. Officer Pulido parked the patrol car next to the alley.

At that time, the three men were bent over something next to a dumpster. As they left the area, Guinn stood up and yelled, "I have been robbed." After following the three men some distance on foot, Vallejo identified himself as a police officer and ordered the three men to stop. Two of them stopped. Frank Lopez, however, continued to walk away quickly.

Pulido had driven the squad car to Vallejo's location and as he left the vehicle, he too ordered the three men to stop after identifying himself as a police officer. Frank Lopez continued to walk away quickly. Officer Pulido again ordered Frank Lopez to halt. The defendant started running and Pulido again yelled, "Police." Lopez continued to run away from the scene. During the ensuing chase, the defendant began to raise his right hand carrying what appeared to be a gun. Officer Pulido then fired a shot toward Lopez. Pulido finally caught and arrested Lopez. The stick, the gun and the wallet were never found.

In his closing argument to the jury, counsel for Frank Lopez argued that it was a case of mistaken identity and Mr. Lopez fled from the scene after the police identified themselves because he had been involved in "some fray with somebody earlier that evening."

The jury was instructed on the definition of the term "willful" and given CALJIC No. 16.100.[1]

On appeal, the defendant asserts that knowledge is an element of section 148 requiring instruction. Failure to properly instruct the jury on an element of an offense was reversible per se. The trial court had a sua sponte

---

[1]The jury was instructed, in part, as follows: "The word willful, when applied to the intent with which an act is done or omitted and as used in my instructions implies simply a purpose or willingness to commit the act or to make the admission in question. The word does not require in its meaning any intent to violate law or to injure another or to acquire any advantange [sic].

" . . . . . . . . . . . . . . . .

"The defendant, Frank Lopez, is charged in Count II with the violation of Penal Code Section 148, which provides every person who willfully resists, delays, or obstructs any peace officer in the discharge or attempt to discharge any duty of his office is guilty of a misdemeanor.

"The phrase 'in the discharge or attempt to discharge' any duties of the officer as used in this instruction includes the making of or the attempt to make a lawful arrest by a peace officer. A Firebaugh peace officer is a peace officer, and, as such a public officer within the meaning of this instruction."

duty to instruct that the excessive force used by Officer Pulido in arresting the defendant made the arrest unlawful. The trial court also had the duty, sua sponte, to instruct that the People had the burden of proving a lawful arrest. Because resisting arrest was indivisibly part of the robbery, the trial court erred in sentencing defendant concurrently for violation of sections 211 and 148. The sentence as to section 148 should have been stayed.

DISCUSSION

I.

KNOWLEDGE.

Penal Code section 148 is much broader than Penal Code section 834a, even though both sections proscribe the same conduct. Penal Code section 148 states that: "Every person who willfully resists, delays, or obstructs any public officer or peace officer, in the discharge or attempt to discharge any duty of his office, when no other punishment is prescribed, is punishable by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not exceeding one year, or by both such fine and imprisonment."

Penal Code section 834a states that: "If a person has knowledge, or by the exercise of reasonable care, should have knowledge, that he is being arrested by a peace officer, it is the duty of such person to refrain from using force or any weapon to resist such arrest."

■ Although the sections are parallel, unlike section 834a, section 148 does not expressly make knowledge an element of the offense of resisting arrest. ■ Defendant argues that substantive due process requires that knowledge be an implied element in the statute. Otherwise, people could be found guilty of resisting arrest without realizing that someone is in fact a police officer. This would be especially true for officers working under cover.

The state replies that section 148 is a general intent crime that does not require proof of specific intent to thwart an arrest. Defendant knew or should have known that Officer Pulido was a policeman. The term "willful" is synonymous with intent. (*In re Smith* (1972) 7 Cal.3d 362, 364 [102 Cal.Rptr. 335, 497 P.2d 807].) The People argue that because the jury was instructed properly by the court's instruction of intent via its definition of willful, the jury necessarily decided the issue of defendant's intent to resist arrest. It is sufficient that a defendant intends to do an act without a separate

showing of a specific intent to violate the law or of knowledge that an act is a crime.

*In re Stanridge* (1937) 23 Cal.App.2d 95 [72 P.2d 162], disapproved on other grounds,[2] implies at page 97 that Penal Code section 148 requires a showing that a defendant must know that the person arresting him is an officer.

The supplement to CALJIC No. 16.100, however, makes the following comment concerning the element of knowledge: "There is dictum in People v. Scrivens, 276 Cal.App.2d 429, 433; . . ., to the effect that knowledge by the defendant of the status or duty of the officer is not required for a violation of § 148, Penal Code as it is in §§ 242-243, Penal Code." (CALJIC No. 16.100 (4th ed. 1986 pocket pt.) p. 40.)

*People v. Scrivens* (1969) 276 Cal.App.2d 429 [81 Cal.Rptr. 86] involved a battery in violation of Penal Code section 242. In addressing the contention by Scrivens that he was charged with the wrong offense, analogy was drawn to section 148. The *Scrivens* court stated that knowledge "by the offender of the status or duty of the officer is not required as it is in sections 242-243." (276 Cal.App.2d at p. 433.)

The *Scrivens* case is dictum on this point and is not binding on this court.

■ Under Penal Code section 20, a crime cannot be committed without the union of an act with wrongful intent. Penal Code section 26 holds that a person is incapable of committing a crime where an act is performed in ignorance or mistake of fact negating criminal intent. A crime cannot be committed by mere misfortune or accident. (See *People v. Parker* (1985) 175 Cal.App.3d 818, 822 [223 Cal.Rptr. 284].)

*People v. Calban* (1976) 65 Cal. App.3d 578, 584-585 [135 Cal.Rptr. 441], held that to be guilty of making a false affidavit in violation of Elections Code section 29218, the prosecution had to prove that the defendant knew the affidavit was false when made. *People v. Hernandez* (1964) 61 Cal.2d 529, 534-536 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092], held that a defendant's good faith, reasonable belief that a victim is 18 years old is a defense to statutory rape. *People v. Vogel* (1956) 46 Cal.2d 798, 803 [299 P.2d 850], held that a defendant's good faith, reasonable belief he was free to remarry was a defense to bigamy. Commenting on this line of authority,

---

[2]*In re Stanridge, supra,* was disapproved for its analysis of habeas corpus procedure by the California Supreme Court in *In re Smiley* (1967) 66 Cal.2d 606, 614 [58 Cal.Rptr. 579, 427 P.2d 179].)

Justice Rouse wrote that: "In each case, had the defendant's mistaken view of the facts been correct, it would have precluded a finding of criminal intent or evil design and the defendant's conduct by itself would have been entirely innocent. Thus, *to avoid making the offenses matters of strict liability,* the courts, as noted above, held either that knowledge was an element of the offense or that lack of knowledge was defense." (*People* v. *Parker, supra,* 175 Cal.App.3d at p. 822, italics added.)

Mens rea and actus reas must come together to make an act a crime under Penal Code section 20. Merely running away from someone is not resisting arrest. Running from a plainclothes officer who does not identify that he or she is an officer could not, for instance, be a crime. ■ The state is confusing the concept of general intent crimes with the requirement of knowledge. The two terms are not the same. Knowledge does not refer to the defendant's awareness that what he or she does is culpable or criminal in nature. Knowledge refers to awareness of the particular facts proscribed in criminal statutes. Justice Franson defined criminal knowledge in the *Calban* decision as follows: "A requirement of knowledge is not a requirement that the act be done with any specific intent. (See *People* v. *Faubus* (1975) 48 Cal.App.3d 1, 4-6 . . .; *People* v. *Garcia* (1967) 250 Cal.App.2d 15, 21. . . .) The word 'knowing' as used in a criminal statute imports only an awareness of the facts which bring the proscribed act within the terms of the statute. (Pen. Code, § 7, subd. 5.)" (65 Cal.App.3d at p. 584.)

General and specific intent crimes are defined as follows in *People* v. *Hood* (1969) 1 Cal.3d 444, 456-457 [82 Cal.Rptr. 618]: "When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent."

General intent crimes proscribe particular acts. Reference is not made to the actor's intent to achieve *further acts* or *future consequences* as to the restricted action. There must be, however, awareness by the actor that the illegal act is being done within the terms of the statute. This is knowledge, not specific intent. Specific intent is the requirement that the criminal actor intends to do a further act or to achieve an additional consequence beyond the initial culpable act.

The *Hood* decision used assault with a deadly weapon to illustrate this point. Firing a gun in someone's direction is assault under Penal Code section 245. An assault occurs even if the defendant does not intend to hit

the victim. Firing the weapon toward a human being is the proscribed act. The act itself is so reckless and deadly, it is an outlawed act. This is a general intent crime. (1 Cal.3d at pp. 452-453.)

In the instant action, the act of fleeing from an officer trying to make a lawful arrest is proscribed. Before one can be found culpable, however, he or she must know, or through the exercise of reasonable care should have known, that the person attempting to make the arrest is an officer. Otherwise the statute is overbroad. It would make mere flight or fear of capture an offense.

The anomaly that section 834a requires knowledge while section 148 does not is also avoided by this holding. The instant action is analogous to *Calban, Hernandez* and *Vogel.* The opposite conclusion would be inconsistent with Penal Code section 20, which requires mens rea. It is also inconsistent with Penal Code section 26 which also requires mens rea, although it defines mens rea negatively as ignorance or mistake of fact negating criminal intent. In effect, Penal Code section 20 makes mens rea a requirement to act culpably. Section 26 creates an affirmative defense by allowing a defendant to show that there was no criminal intent.

*Calban* also confronted inconsistent Elections Code sections. Unlike other Elections Code sections, section 29218 left out any reference to knowledge as an element of the crime. This court nevertheless concluded that to be culpable a defendant charged under section 29218 had to have knowledge that affidavits were falsely prepared.

The underlying policy of the law, identified by Justice Rouse in the *Parker* case, is to avoid making crimes strict liability offenses. That policy would be better served if Penal Code sections 148 and 834a were both found to contain a knowledge element.

The standard applied here is not the subjective belief by the defendant that he was being chased by someone other than a police officer. The standard used in section 834a is that of actual knowledge or what a reasonable person should have known. This is an objective standard for measuring the knowledge of the actor. Under this ruling, section 148 still remains a broader statute. This is so because it not only proscribes resisting arrest, but it also limits other forms of hindering a police officer or other public official from executing the duties of his or her office.

The trial court and counsel on both sides relied upon CALJIC No. 16.100. This instruction is in turn founded upon the misleading dictum of *People v. Scrivens, supra,* 276 Cal.App.2d 429, 433. CALJIC No. 16.100 in future

cases involving violations of section 148 should include knowledge as an element.[3]

The trial court's failure to instruct the jury on the element of knowledge was error. The question remains whether the error is reversible.

## II.

### STANDARD OF REVIEW.

*People* v. *Croy* (1985) 41 Cal.3d 1, 12-16 [221 Cal.Rptr. 592, 710 P.2d 392], and *People* v. *Garcia* (1984) 36 Cal.3d 539, 554-556 [205 Cal.Rptr. 265, 684 P.2d 826], both hold that the failure to instruct on criminal intent as an element of a crime is prejudicial and reversible per se. *Garcia* is based upon the California Supreme Court's interpretation of federal law under *Connecticut* v. *Johnson* (1983) 460 U.S. 73 [74 L.Ed.2d 823, 103 S.Ct. 969]. (36 Cal.3d at p. 554, fn. 10.) *Croy* is also founded "squarely upon the principles enunciated by the United States Supreme Court in *Connecticut* v. *Johnson* . . . ." (41 Cal .3d at p. 13.)

The *Garcia-Croy* automatic reversal standard of review recognizes four exceptions: (1) the defendant is acquitted of the charge for which the erroneous instruction was given; (2) the issue of intent is conceded as a defense; (3) the actual defense posed by omitting the instruction was necessarily resolved against the defendant under proper instructions; and (4) the parties recognize intent as an issue, address the issue with all the evidence at their command, and intent is not only established as a matter of law but the contrary evidence is shown unworthy of consideration. The *Garcia-Croy* exceptions to automatic reversal have been applied very sparingly.

■ Knowledge in the instant action has been demonstrated as an element to resisting arrest. Knowledge, like intent, is a fundamental element to the crime charged. The failure to instruct the jury on the definition of the term knowledge was error.

The United States Supreme Court, however, has refused to apply an automatic reversal standard of review to the failure to properly instruct a jury

---

[3]Correcting current CALJIC No. 16.100 would be accomplished by incorporating knowledge into CALJIC No. 16.100 and defining knowledge using CALJIC No. 1.21. As modified, paragraph one of CALJIC No. 16.100 would read: Every person is guilty of a misdemeanor when he resists, delays, or obstructs any [public officer] [peace officer] discharging or attempting to discharge any duty of his office where the person knows, or should have known by exercising reasonable care, that the [public officer] [peace officer] is a [public officer] [peace officer].

on the intent element in a homicide case. *Rose* v. *Clark* (1986) 478 U.S. 570 [92 L.Ed.2d 460, 106 S.Ct. 3101] applied the standard of review announced in *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065] and *Delaware* v. *Van Arsdall* (1986) 475 U.S. 673, 680 [89 L.Ed.2d 674, 683-684, 106 S.Ct. 1431, 1436]: "In *Chapman* v. *California,* 386 U.S. 18 . . ., this Court rejected the argument that errors of constitutional dimension necessarily require reversal of criminal convictions. And since *Chapman,* 'we have repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.' " (478 U.S. at p. __ [92 L.Ed.2d at p. 469, 106 S.Ct. at p. 3105].)

*Rose* v. *Clark* reasons that the very purpose of a trial is to decide the factual question of guilt or innocence. Where a trial is tainted with constitutional error that undermines the trial as a vehicle for determining guilt or innocence, then a reviewing court need not consider particular evidence. The high court uses three examples of fundamentally unfair cases requiring automatic reversal: (1) introduction of coerced confessions; (2) complete denial of the right to counsel; or (3) adjudication by a biased judge.

The harmless error standard of review necessarily presupposes a fair trial: "[E]rror is harmless if, beyond a reasonable doubt, it 'did not *contribute to the verdict* obtained.' " (478 U.S. at p. __ [92 L.Ed.2d at p. 471, 106 S.Ct. at p. 3106].)

As this court recently recognized at footnote 8 in *People* v. *Herbst* (1986) 186 Cal.App.3d 793, 803 [233 Cal. Rptr. 123], the *Garcia-Croy* rule is based upon the California Supreme Court's interpretation of the United States Constitution. As we recognized in *People* v. *Herbst,* the *Garcia-Croy* standard of review has been superseded by *Rose* v. *Clark. Rose v. Clark* uses the *Chapman* standard for review of error.

The error cited by this defendant is not reversible under the *Rose* decision. It is uncontradicted that the arresting officers were driving a marked patrol car in plain view on city streets. After hearing the victim shout, "I have been robbed," Officer Vallejo jumped out of the patrol car ordering all three suspects to stop. He identified himself as a police officer. Two of the suspects in fact stopped.

The defendant, however, fled. Officer Pulido pursued him. Twice during the chase he identified himself as a police officer and ordered the defendant to stop. He also fired at the defendant once. The only fact not established at trial is whether the officers were in uniform at the time of the arrests. No

evidence was offered to rebut the officers' testimony of these facts. The defendant failed to state any facts that he lacked knowledge that these were police officers. This sort of negative evidence would act as an affirmative defense under Penal Code section 26, the *Hernandez* and *Vogel* cases.

There was no evidence, for instance, that the defendant was deaf and could not hear Officers Vallejo and Pulido as they ordered him to halt. There was no testimony that the officers were in plain clothes. There was no evidence offered by the defendant that he was blind or in some other way handicapped so that he could not perceive that these were police officers.

Under the *Rose-Chapman* standard of review, there is nothing factually to support the defendant's theory on appeal. The evidence that defendant knew, or exercising reasonable care should have known, that these were police officers attempting to arrest him is overwhelming. There is no evidence to the contrary. The alleged error did not contribute to the verdict on section 148 beyond a reasonable doubt.

*Connecticut* v. *Johnson, supra,* 460 U.S. 73, and *Garcia-Croy* advanced exception number two to the automatic reversal rule: that the issue of intent is conceded as a defense. Here, defendant's counsel advanced the theory that his client fled the police because he had been involved in an earlier altercation. This is a concession that the defendant *knew* he was being chased by police after being told to stop. The issue of knowledge is directly analogous to the intent issue analyzed in the federal and California decisions. Even if the automatic reversal rule under *Garcia* and *Croy* survives under the California Constitution, exception two applies to this case. Defense counsel conceded the issue at trial. Furthermore, the defendant never raised this issue at trial. The verdict below is affirmed.

III., IV.*

. . . . . . . . . . . . . . . . . . . .

CONCLUSION

A careful analysis of the Penal Code shows that knowledge is indeed an element of Penal Code section 148. Knowledge should not be confused with specific intent. Penal Code section 148, even with a knowledge element, is still a general intent crime. The trial court should have instructed the jury on the definition of the term "knowledge." In the instant case, however, the

---

*See footnote on page 592, *ante.*

evidence that the defendant had actual knowledge (or reasonably should have known) that he was being arrested by a police officer was overwhelming. Furthermore, the defendant actually conceded the issue that he had knowledge that these were police officers by the closing argument his counsel made at trial. Under the *Rose* v. *Clark* and the *Garcia-Croy* standards of review, the error is not reversible.

### DECISION

The judgment is affirmed.

Brown (G. A.), P. J., and Best, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 18, 1987.