Filed 7/30/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.L., a Person Coming Under the Juvenile Court Law. | H045802 (Santa Clara County Super. Ct. No. 17-JV-42477A) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>A.L.,<br><br>    Defendant and Appellant. | |

A.L. was declared a ward of the juvenile court after it found she committed three offenses:  battery on a peace officer, resisting an officer, and resisting an officer with force.  A.L. contends the court erred by not considering her state of mind at the time she resisted.  Two of the offenses—resisting an officer (Pen. Code, § 148, subd. (a)(1)) and forcefully resisting an officer (Pen. Code, § 69)—require actual knowledge that an officer is engaged in the performance of duty.  Since the record does not unambiguously show the juvenile court misapplied the law, we must affirm the wardship order.

## I.    BACKGROUND

Sixteen-year-old A.L. was in a fight with her sister violent enough for police to be called.  Several officers responded in full uniform and marked patrol cars.  When they arrived, A.L.'s sister was on the ground covering her face and A.L. appeared to be kicking her.  A.L. walked to one of the officers and said, "Take her to the fucking jail. Look, she bit me," while displaying a bite mark on her arm.  She then started back toward

her sister, who was still on the ground. The officer grabbed A.L.'s arm and told her, "I saw you kick her when she was down … [h]old on. Hold on. … Relax." But she pulled away, so a second officer took hold of her other arm. She screamed and dropped to the pavement. While going to the ground, she kicked at and scratched one of the officers with her fingernails; then she bit him on the arm. He punched A.L. twice in the head, turned her onto her stomach, and put her in handcuffs.

The District Attorney filed a juvenile wardship petition alleging that A.L. violated Penal Code sections 243, subdivision (d) (battery causing serious bodily injury); 243, subdivision (b) (battery on a peace officer); 69 (resisting a peace officer by force); and 148, subdivision (a)(1) (resisting a peace officer). At the contested jurisdictional hearing, the prosecutor conceded there was insufficient evidence to sustain the battery with serious bodily injury count, but urged the remaining counts should be sustained. The prosecutor argued that the element of the resisting offenses requiring knowledge the officer was performing a duty had been proven—even if the court accepted A.L.'s position that she resisted because, as the victim of her sister's attack, the officers had no right to detain her: "[T]hat seems to be the crux of her issue, is that she felt she didn't have to comply with putting her arms behind her back and being handcuffed because she felt she wasn't the actual perpetrator; that she was instead the victim and she was angry and she fought. And she doesn't get to do that once the Court makes the determination that the police were actually within their rights to detain her, and in this particular case, they were."

The juvenile court agreed, stating, "the law is real clear here. Whether you think the police have the right to detain you or stop you or hold onto you, the law in this state says you don't get to resist. That's just what the Penal Code says. There's no way around it." The court sustained the allegations that A.L. violated Penal Code section 243, subdivision (b); section 69; and section 148, subdivision (a)(1). She was declared a ward of the court, returned to parental custody under supervision of a probation officer, and

ordered to comply with various conditions recommended by the probation department, including 30 hours of community service.

## II. DISCUSSION

A.L. contends the juvenile court used an incorrect standard to find that she violated Penal Code sections 243, subdivision (b); 69; and 148, subdivision (a)(1).[1] She argues that the court's comments in announcing its decision reveal that it did not consider *her* state of mind at the time she resisted, which is an element of each offense.

Wrongful intent is fundamental to virtually all criminal offenses. (Pen. Code, § 20.) "So basic is this requirement that it is an invariable element of every crime unless excluded expressly or by necessary implication." (*In re Jennings* (2004) 34 Cal.4th 254, 267.) Criminal liability will not be imposed without proof of the necessary mental state, except where the Legislature has expressed in the language of the statute that liability will attach solely because an act was committed, without regard to a perpetrator's intent. (*Ibid.*) Determining whether the juvenile court applied the correct legal standard for intent requires us to interpret the applicable statutes, which we do using our independent judgment. (*People v. Morales* (2018) 25 Cal.App.5th 502, 509.) The rules governing our inquiry are well established: "When construing a statute, a court seeks to determine and give effect to the intent of the enacting legislative body. (Citation.) ' "We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent." ' " (*People v. King* (2006) 38 Cal.4th 617, 622.) " 'If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs.' " (*Schatz v. Allen Matkins Leck Gamble & Mallory LLP* (2009) 45 Cal.4th 557, 571.) Consistent with those principles, we look to the plain language of the statutes at issue here to determine what mental state the Legislature identified as an element of each offense.

---

[1] Unspecified statutory references are to the Penal Code.

3

## A. PENAL CODE SECTION 243, SUBDIVISION (B): "KNOWS OR REASONABLY SHOULD KNOW"

Penal Code section 243, subdivision (b) prohibits battery on a peace officer.  It applies "[w]hen a battery is committed against the person of a peace officer […] and the person committing the offense knows or reasonably should know that the victim is a peace officer [] in the performance of his or her duties[.]"  The statute does not impose strict liability for battery on a peace officer; rather, it punishes only someone who actually knows or reasonably should know the victim is an officer performing his or her duty.  "Knows or reasonably should know" is a criminal negligence standard.  It allows the wrongful intent required for a criminal offense to be proven either by the perpetrator's own state of mind or based on what a reasonable person would be aware of in a given situation.  (See *Williams v. Garcetti* (1993) 5 Cal.4th 561, 574 ["Under the criminal negligence standard, knowledge of the risk is determined by an objective test: '[I]f a *reasonable person* in defendant's position would have been aware of the risk involved, then defendant is presumed to have had such an awareness.' "].)

Since criminal negligence is an objective standard, the juvenile court was correct that under Penal Code section 243, subdivision (b), it makes no difference whether A.L. believed the officers were performing their duty when they detained her.  It is enough that a reasonable person would have believed they were.  (See, e.g., *People v. Luo* (2017) 16 Cal.App.5th 663, 670–671.)  Accordingly, the juvenile court applied the correct standard in finding that A.L. violated Penal Code section 243, subdivision (b).

## B. PENAL CODE SECTION 69: "KNOWINGLY"

Penal Code section 69 defines two different crimes:  attempting to deter an executive officer in the performance of duty by threats or violence; and resisting an executive officer in the performance of duty by force or violence.  (*People v. Smith* (2013) 57 Cal.4th 232, 240.)  The prosecution's theory was that A.L. violated section 69 by forcefully resisting an officer.  The offense is committed when a person "knowingly

4

resists, by the use of force or violence, the officer, in the performance of his or her duty." (Pen. Code, § 69.) The intent element specified by the Legislature—knowingly— "requires actual knowledge on the part of the defendant that the person being resisted is an executive officer and that the officer is engaged in the performance of his/her duty." (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 237; see also *People v. Atkins* (2019) 31 Cal.App.5th 963, 974.) Actual knowledge, unlike constructive knowledge under a criminal negligence standard, means a person is subjectively aware of the necessary facts. (See Pen. Code, § 7, subd. (5) ["The word "knowingly" imports only a knowledge that the facts exist which bring the act or omission within the provisions of this code."].) We agree with A.L that her knowledge regarding whether the officers were performing their duty is relevant to deciding if she violated Penal Code section 69. A subjective appreciation of that fact is an element of the offense.

Requiring proof of actual knowledge does not mean that a defendant can avoid culpability under Penal Code section 69 merely by asserting a belief that an officer had no right to detain them. A defendant's assertion regarding any disputed fact—including his or her own state of mind—is not dispositive, as not every assertion is a credible one. The trier of fact is not required to accept the defendant's version of events, particularly if it is at odds with other evidence. The controlling question is whether the evidence shows A.L. knew that the officers were in the performance of duty when they tried to stop her from advancing toward her sister. A.L.'s retrospective testimony about her state of mind at the time of the offense does not require a finding in her favor on the issue. But the prosecution's burden of proving a Penal Code section 69 charge includes the element of actual knowledge that the officer was performing a duty.

### C. PENAL CODE SECTION 148, SUBDIVISION (A)(1): "WILLFULLY"

Penal Code section 148, subdivision (a)(1) prohibits resisting an officer in the performance of duty, though the resistance need not be forceful or violent. The intent specified in the statute is that the perpetrator "willfully resists, delays, or obstructs any []

peace officer … in the discharge or attempt to discharge any duty of his or her office or employment[.]"  (Pen. Code, § 148, subd. (a)(1).)

Willfully is most naturally read as synonymous with knowingly, because " 'the term "willfully" … imports a requirement that "the person knows what he is doing." ' " (*People v. Garcia* (2001) 25 Cal.4th 744, 752, quoting *People v. Honig* (1996) 48 Cal.App.4th 289, 334.)  When "willfully" is the mental state required for a crime, the perpetrator must have actual knowledge of the relevant facts.  (*In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1437.)  Therefore, Penal Code section 148, subdivision (a)(1)—like the similar offense described by Penal Code section 69—requires that a defendant have actual knowledge he or she is resisting an officer in the performance of duty.

We are mindful that our conclusion disagrees with *People v. Lopez* (1986) 188 Cal.App.3d 592, which held the intent element of Penal Code section 148, subdivision (a)(1) is criminal negligence—"knows or should know."  *Lopez* considered a challenge to a jury instruction which told the jury that "willfully" means the act was committed intentionally, but it did not identify the defendant's knowledge of particular facts as an element of the section 148 offense.  The *Lopez* court held, correctly, that knowledge is an element of Penal Code section 148, subdivision (a)(1) and the instruction for that charge "should include knowledge as an element." (*People v Lopez*, *supra*, at pp. 599–600.)  But in our view the court then inaccurately stated what would satisfy the element:  "Before one can be found culpable, however, he or she must know, or through the exercise of reasonable care should have known, that the person attempting to make the arrest is an officer." (*Id*. at p. 599.)  As we have discussed, that standard describes criminal negligence, not willfulness.  *Lopez* is correct in that the crime of resisting an officer requires proof of a defendant's state of mind as an element.  But "willfulness" requires proof of actual and not merely constructive knowledge.

As this court noted in *People v. Atkins*, *supra*, 31 Cal.App.5th 963, 979, the analysis used in *Lopez* to arrive at the knowledge standard for Penal Code section 148,

6

subdivision (a) is "somewhat elliptical." *Lopez* appears to have adopted a criminal negligence standard from the language of Penal Code section 834a, a statute imposing a generalized duty to not resist arrest: "If a person has knowledge, or by the exercise of reasonable care, should have knowledge, that he is being arrested by a peace officer, it is the duty of such person to refrain from using force or any weapon to resist such arrest." But Penal Code section 834a is a different statute. Its language should not be imported to define the offense created by Penal Code section 148, subdivision (a)(1), particularly when the Legislature specified a different mental state—willfulness—as the intent element for that offense. (See *In re Jennings*, *supra*, 34 Cal.4th at p. 275 [when the Legislature expressly includes a scienter requirement, a court must not read that element out of the statute and ease the prosecution's burden of proof].)[2] Indeed, since the Legislature used the language of criminal negligence in Penal Code section 834a (and also in section 243, subdivision (b)) but decided to use different language in section 148, subdivision (a)(1), we must respect that choice. (*In re Jennings*, *supra*, 34 Cal.4th 254, 273, quoting *People v. Norwood* (1972) 26 Cal.App.3d 148, 156 [" 'It is a settled rule of statutory construction that where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed with reference to the different statutes.' " ].) Regardless of whether it is desirable from a policy perspective to make criminal negligence the standard for resisting an officer, "we must

---

[2] As *People v. Atkins*, *supra*, 31 Cal.App.5th at p. 978 observed, "The holding of *Lopez* has been incorporated into the pattern jury instruction for section 148(a), which requires the prosecution to prove that, '[w]hen the defendant acted, (he/she) knew, or reasonably should have known that [the officer] was [a peace officer] performing or attempting to perform (his/her) duties.' (CALCRIM No. 2656.)" Since there was no jury trial in this case, the accuracy of that instruction is not an issue in this appeal. But under our holding that Penal Code section 148, subdivision (a)(1) requires proof of actual knowledge, not merely criminal negligence, CALCRIM 2656 is incorrect.

7

give effect to the statute as written, not as it might have or should have been written." (*In re Jerry R.*, *supra*, 29 Cal.App.4th at p. 1439.)

The Supreme Court has found criminal negligence to be the intent element for at least one offense where the Legislature did not expressly articulate the "knows or should know" standard in the statute. *In re Jorge M.* decided that Penal Code section 12280, subdivision (b), a statute prohibiting possession of assault weapons, is violated when a person knows or reasonably should know that a particular firearm is an "assault weapon" as defined by the law. (*In re Jorge M.* (2000) 23 Cal.4th 866, 887.) The analysis in *Jorge M.* does not support grafting a criminal negligence standard onto Penal Code section 148, subdivision (a)(1). The most significant reason is that the statute in *Jorge M.* stated no intent requirement at all. The question was whether the offense imposed strict liability, where a person can be convicted without regard to state of mind, or whether an intent requirement should be read into the statute. By deciding that strict liability was inappropriate and criminal negligence should be the standard, the Supreme Court increased the prosecution's burden of proof as compared with the language of the statute. But here, imposing a criminal negligence standard when the statutory text requires willfulness would decrease the burden of proving a violation.

The *Jorge M.* court also found criminal negligence to be the appropriate standard because, in view of the law's intent to alleviate a serious public safety threat posed by assault weapons, the statute should not be read to contain "any mental state requirement that the prosecution would foreseeably and routinely have special difficulty proving." (*In re Jorge M.*, *supra*, 23 Cal.4th at p. 884.) No similar difficulty is posed by requiring proof of actual knowledge that an officer was engaged in the performance of duty. Actual knowledge may be proven circumstantially. (*Ibid.*) Indeed, absent an admission by the defendant, it must be. It is common knowledge that an officer may detain someone suspected of wrongdoing or who poses a threat to public safety. As a result, the circumstances of an encounter can, in an appropriate case, readily establish that a

8

defendant knew the person being resisted was an officer in the performance of duty.  In contrast, to know that a firearm has the characteristics of an assault weapon may require specialized knowledge, so "in many instances a defendant's direct testimony or prior statement that he or she was actually ignorant of the weapon's salient characteristics will be sufficient to create reasonable doubt." (*Id.* at pp. 884–885.)  The special difficulty in proving actual knowledge that was identified in *Jorge M.* is not present in a prosecution for resisting arrest.

We note that while actual knowledge is a higher standard than criminal negligence, both standards are proven in much the same way:  Circumstantial evidence tending to show that a reasonable person would have known an officer was engaged in the performance of duty will likewise tend to show that a particular defendant was aware of that fact.  The only difference when actual knowledge is required is that if a defendant denies knowing the relevant facts, the trier of fact must judge the credibility of that statement.  Using actual knowledge as the intent element for Penal Code section 148, subdivision(a)(1) comports with the statutory language and does not present any undue obstacle to its enforcement.

A defendant's actual knowledge that an officer is engaged in the performance of a duty is required by the plain language of both Penal Code sections 69 and 148, subdivision (a)(1).  Less clear is whether that requirement means a defendant must subjectively appreciate that an officer is *lawfully* performing a duty.  There may be no distinction between performing a duty and lawfully performing a duty, since an officer who is acting unlawfully cannot be said to be performing his or her duty.  (See, e.g., *People v. Olguin* (1981) 119 Cal.App.3d 39, 46 [when officers use excessive force they are "not acting within the scope of their duties"].)  But in the context of the Penal Code section 190.2, subdivision (a)(7) special circumstance for killing an officer in retaliation for performance of duty, the Supreme Court decided "the defendant's subjective understanding that the officer's conduct was lawful is not an element of proof." (*People*

9

*v. Jenkins* (2000) 22 Cal.4th 900, 1021.) Here, even if actual knowledge of lawful performance were required, the juvenile court's comments do not unambiguously reveal a misunderstanding of the law on that point. We therefore need not decide the contours of the actual knowledge element.

### D. NO UNAMBIGUOUS MISUNDERSTANDING OF LAW

Having decided that Penal Code sections 69 and 148, subdivision (a)(1) require proof of A.L.'s actual knowledge, we must determine whether the juvenile court's comments at the disposition hearing show a clear misapplication of the law, necessitating reversal. "Ordinarily statements made by the trial court as to its reasoning are not reviewable. An exception to this general rule exists when the court's comments unambiguously disclose that its basic ruling embodied or was based on a misunderstanding of the relevant law." (*In re Jerry R.*, *supra*, 29 Cal.App.4th at p. 1440.) The juvenile court's statement that "whether you think the police have the right to detain you … you don't get to resist," does not on its face establish the court applied the wrong legal standard.

The prosecutor argued that A.L.'s belief about whether the officers were performing a duty is irrelevant "once the Court makes the determination that the police were actually within their rights to detain her, and in this particular case, they were." If the juvenile court accepted that position, it may have found that the statutes were violated so long as the officers were performing their duty, without regard to A.L.'s awareness of that fact. But the juvenile court's comments here are susceptible of more than one interpretation, and unless the comments unambiguously show it misunderstood the law, we must affirm. The court may indeed have been expressing a misunderstanding of the relevant law by indicating A.L.'s state of mind did not matter. On the other hand, the court may have been referring only to the Penal Code section 243, subdivision (b) count, in which case the comments correctly described the law. The court also expressly found that the necessary elements for all three offenses had been proven beyond a reasonable

doubt, and those elements include the actual knowledge requirement of Penal Code sections 69 and 148, subdivision (a)(1). On balance, the juvenile court's comments are not so unambiguous as to require reversal.

## III. DISPOSITION

The juvenile court's order is affirmed.

_____
Grover, J.

**I CONCUR:**

_____
Danner, J.

**I CONCUR IN THE JUDGMENT ONLY:**

_____
Mihara, Acting P. J.

**H045802 -** *The People v. A.L.*

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court, Case No.: 17-JV-42477A |
| Trial Judge: | Hon. Franklin E. Bondonno |
| Attorneys for Plaintiff/Respondent: The People | Xavier Becerra<br>  Attorney General of California<br>Gerald A. Engler<br>  Chief Assistant Attorney General<br>Jeffrey M. Laurence<br>  Senior Assistant Attorney General<br>Rene A. Chacon<br>  Supervising Deputy Attorney General<br>Julia Y. Je<br>  Deputy Attorney General |
| Attorneys for Defendant/Appellant: A.L., a Minor | Under Appointment by the Court of Appeal:<br>Mark McKenna<br>Law Office of Mark McKenna |