Filed 1/30/19

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>RANDALL PATRICK ATKINS,<br><br>　　Defendant and Appellant. | H044999<br>(Santa Cruz County<br>Super. Ct. No. 17CR01497) |


　　　　A jury convicted defendant Randall Patrick Atkins of attempting to deter and resisting an executive officer in the performance of his duties under Penal Code section 69 (hereafter section 69).[1]  Atkins contends on appeal that we must reverse his conviction because the trial court erred in instructing the jury that the People need not prove beyond a reasonable doubt that Atkins knew the person whom he attempted to deter was an executive officer.  We agree that the trial court erred, conclude that the error was prejudicial, and reverse his conviction.

## I.  FACTS AND PROCEDURAL BACKGROUND

　　　　Atkins was charged by information with attempting to deter an executive officer and resisting an executive officer (§ 69; count 1); misdemeanor possession of a weapon on school grounds (§ 626.10, subd. (b) (hereafter section 626.10(b)); count 2); and

---

[1] All further statutory references are to the Penal Code.

misdemeanor resisting, obstructing, or delaying a peace officer (§ 148, subd. (a) (hereafter section 148(a)); count 3).

In count 1, the information charged that "On or about [March 10, 2017], in the above named Judicial District, the crime of Resisting [an] Executive Officer, in violation of Penal Code Section 69, a Felony, was committed by Randall Patrick Atkins, who did unlawfully attempt by means of threats and violence to deter and prevent Officer Jack Calhoun, who was then and there an executive officer, from performing a duty imposed upon such officer by law, and did knowingly resist by the use of force and violence said executive officer in the performance of his/her duty." (Some capitalization omitted.)

Nathaniel Calhoun, the officer named in Count 1,[2] testified at trial that, on March 10, 2017, he was a police officer with the Police Department of the University of California, Santa Cruz (UC Santa Cruz). Calhoun was working the night shift as a patrol officer. He was wearing a police uniform with a badge and belt and was driving a "fully marked Ford Crown Victoria police cruiser." The car was a "typical patrol car," that said "UC Santa Cruz Police Department" on it and had blue and red lights on top.

Just before 1:00 a.m. on March 10, Officer Calhoun was patrolling in his car in a parking structure located on the UC Santa Cruz campus. The parking structure was five or six stories tall, very well-lit, and had a spiral roadway inside it. When he was on the second story of the parking structure, Calhoun "saw two skateboarders traveling towards [him] at a high rate of speed" down the parking structure roadway. The skateboarders narrowly missed crashing into his patrol car. One of the skateboarders jumped off his skateboard; the other continued down the ramp and "vanished from sight." Skateboarding is prohibited on the campus of UC Santa Cruz.

Calhoun detained the man who had jumped off his skateboard and placed the skateboard on the hood of Calhoun's patrol car. The man who had skateboarded away,

---

[2] Calhoun testified that his first name is Nathaniel, but he "goes by his middle name." The information referred to him as "Jack Calhoun."

later identified as Atkins, came back yelling that Calhoun had tried to hit the men with his patrol car. Atkins took the skateboard off Calhoun's car, started walking away, and "said something to the effect that [UC Santa Cruz] were rent-a-cops and he didn't need to listen to [them]."

Officer Calhoun told Atkins to stop, but Atkins ignored Calhoun's command and continued to walk away. Calhoun grabbed Atkins's arm, but Atkins jerked his body away and broke free from Calhoun's grip. The other man and Atkins ran out of the parking garage and got into Atkins's truck, which was parked in a parking stall. Calhoun ran to the truck and stood behind it.

The engine of the truck went on. Atkins, who was in the driver's seat, rolled down his window and yelled that "he did nothing wrong, [and] would be forced to run [Calhoun] over if [he] didn't get out of his way of his car." Officer Calhoun perceived Atkins's statement as a "credible threat" that Atkins "would run [him] over if [he] didn't get out of his way." Fearing for his safety, Calhoun moved away, and Atkins drove away in the truck. Based on the truck's direction of travel, if Calhoun had not moved away, the truck would have hit him.

Officer Calhoun got back into his car and followed the truck. Another UC Santa Cruz officer, Officer Flippo, arrived and stopped the truck. Calhoun approached Atkins, who was still inside the truck, and grabbed Atkins's left arm. Atkins told Calhoun that he "had no right to search his vehicle and that we were rent-a-cops and we couldn't do anything to him." Calhoun told Atkins "multiple times" that he was a police officer.

Officer Flippo told Atkins that he was under arrest for "obstructing an officer." Atkins, who was agitated and uncooperative, was still sitting in the driver's seat of his truck. Flippo and Calhoun pulled Atkins out of the truck. Atkins lunged back toward the truck. Calhoun and Flippo "went hands-on and forced him to the ground." Atkins was physically resisting Calhoun and Flippo by tensing and bracing his arms and "refusing to put his hands behind his back." Calhoun and Flippo ordered Atkins to put his hand

3

behind his back and to stop resisting. Another officer arrived, and they were able to handcuff Atkins. While handcuffed, Atkins was "flailing" his body, and Flippo had to put a "control hold" on him so that Calhoun could search him.

Officer Gregory Daniel Flippo testified that, on March 10, 2017, he was working as a sergeant with the UC Santa Cruz Police Department. He was on patrol and in uniform. Flippo was dispatched to assist Calhoun. When Flippo saw Atkins driving the truck, Flippo activated the emergency lights on his patrol car, pulled into the oncoming lane of traffic, and "essentially forced [the truck] to stop in front of [him]." Flippo got out of his car, drew his gun, and yelled at the occupants of the truck to raise their hands. Atkins was very upset and was "basically challenging our authority to stop him saying, you know, you have no legal authority to stop me, I do not recognize your authority. You guys aren't even police officers." Flippo described how Atkins physically resisted Flippo's attempts to handcuff and search him.

Ravinder Bal testified that, on March 10, 2017, she was working as a police officer with the UC Santa Cruz Police Department. She arrived on the scene to help Officer Calhoun and Sergeant Flippo arrest Atkins. She heard Atkins "yelling that it was an unauthorized stop, that we had no right to contact him, that everything was just illegal contact and that he knew his rights." Bal observed the physical struggle between Flippo and Atkins.

Atkins testified that he first saw Officer Calhoun when Atkins was skateboarding down the parking structure at approximately 20 miles per hour. Atkins thought Calhoun endangered his life by blocking the skateboarders' path of travel with his car when they were "hauling balls." Atkins told the jury, "there's no brakes on a skateboard, that's common knowledge." Atkins saw Calhoun's car but thought it was a "security car" and not a police car. Atkins acknowledged that the car was black and white but stated "security forces, cop cars, sheriff's units, they all have Crown Victoria[s]." Calhoun's car did not have any markings on it other than "[o]ne tiny yellow star on the side."

4

Atkins believed that "skateboarding is not a crime." Atkins was "in full-on panic mode." Atkins had never seen any of the three officers before that evening.

Atkins acknowledged that he told Calhoun he would run him over with his truck, but "I didn't believe he was a cop, he was endangering my life." Atkins did not run Calhoun over, and Atkins did not intend to or want to run Calhoun over.

Atkins stated that Calhoun had pointed a taser at him, but "I thought he was a security guard. Security guards, they own guns, tasers, night sticks, all that and then some." Atkins agreed that Calhoun was dressed in a police uniform, but "[s]o are security guards at shopping malls." Atkins saw a "tin badge," but you can "buy some badges at the Dollar Tree." Atkins also did not believe that Calhoun was a police officer because Calhoun was by himself and "cops come in multiples." Calhoun identified himself to Atkins as a police officer, but Atkins told the jury, "[a]nybody can say I am the police." Referring to Calhoun, Akins stated, "I didn't know he was an officer."

The trial court gave the jury several instructions relevant to the section 69 charge. Neither counsel objected to the final wording of any of the instructions. The prosecution argued that the jury could find Atkins guilty of section 69 both because Atkins tried to prevent Officer Calhoun from performing a duty (by threatening to run Calhoun over with his truck while Calhoun was trying to detain him) and because Atkins physically resisted Calhoun (by pulling away from him multiple times while Calhoun was trying to arrest him). The trial court gave separate instructions on each theory. (CALCRIM Nos. 2651 and 2652.)

The trial court instructed, "The People have proceeded on two theories to establish a violation of Penal Code section 69 as charged in Count 1. Under [o]ne theory, the People have sought to prove that the defendant tried to prevent or deter an executive officer from performing that officer's duty." The trial court instructed the jury that, "under this theory, the People must prove that: [¶] 1. "The defendant willfully and unlawfully used violence or a threat of violence to try to prevent or deter an executive

5

officer from performing the officer's lawful duty; and [¶] 2. When the defendant acted, he intended to prevent or deter the executive Officer Jack Calhoun from performing the officer's lawful duty" (some capitalization omitted). Among other definitions, the instruction stated that "[s]omeone commits an act willfully when he or she does it willingly or on purpose"; "[a] peace officer is an executive officer"; and "[a] sworn member of [the] University of California Police Department is a peace officer" (some italics omitted). The instruction also stated, "[t]he executive [o]fficer does not need to be performing his job duties at the time the threat is communicated."

For the second theory, that Atkins "resisted an executive officer in the performance of that officer's duty," the trial court instructed the jury that the People must prove that "[t]he defendant used force or violence to resist an executive officer"; "[w]hen the defendant acted, the officer was performing his lawful duty"; and "[w]hen the defendant acted, he knew the executive officer was performing his duty." This instruction also stated that "[a] peace officer is an executive officer," and "[a] sworn member of [the] University of California Police Department is a peace officer" (some italics omitted).

The verdict form for count 1 stated, "We the jury in the above-entitled case find the defendant, Randall Patrick Atkins, [guilty/not guilty] of resisting an executive officer, as charged in Count 1." Neither party objected to the verdict form for count 1 or stated that the verdict form should also include language relating to the "first theory" of section 69—namely that Atkins had tried to prevent or deter an executive officer from performing his duty.[3]

---

[3] There is no indication either in the clerk's transcript or in the reporter's transcript that the trial court provided the jury with two verdict forms for count 1. We therefore assume that the verdict form that appears in the record on appeal is the only verdict form given to the jury for this count.

6

In his closing argument, the prosecutor stated with respect to the "second theory" of section 69—using violence or force to resist an executive officer—"the defendant has to know that the executive officer is performing their duty." He added, "And, of course, he does because, again, at some point the notion that you didn't know that these guys were real police officers just isn't reasonable at all." Defense counsel argued that "Mr. Atkins did not believe Officer Calhoun was an officer. The car itself was a black and white car with a small star. He didn't see police on the back, because, again, Officer Calhoun was facing him. And a lot of the security details now, they do have those type of cars. And we always hear evidence or on the news of someone trying to impersonate an officer." In rebuttal, the prosecutor argued that the "first theory" of section 69 did not require proof that Atkins knew that Calhoun was an officer. The prosecutor stated, "You don't have to know that they're an officer to alleviate or unburden yourself of your obligation to follow directives. It's not a defense, otherwise there would be an additional element [that] the defendant knew that Officer Calhoun was a police officer. It's not there."

During deliberations, the jury submitted a written question relating to (in the words of the jury) "Theory One" of section 69. The note stated, "Does intent require that the defendant believed Calhoun was an executive police officer?" The trial court read the question to counsel and stated, "And I'm going to answer that, no, there's no requirement that he believed Calhoun was an executive officer." Neither counsel objected to the trial court's proposed answer to the jury question. The trial court submitted to the jury a written answer that stated, "There is no requirement that [t]he Defendant believed Calhoun was an Executive Police Officer."

The jury found Atkins guilty of sections 69 and 148(a), as charged in counts 1 and 3, but not guilty of section 626.10(b), as charged in count 2. At sentencing, the trial court suspended imposition of sentence, placed Atkins on formal probation for a period of eighteen months, and ordered him to serve 60 days in the county jail and to stay away

7

from the campus of UC Santa Cruz.  The trial court also imposed a number of other conditions of probation and assessed fines and fees.  Atkins timely appealed.

## II.  DISCUSSION

Atkins argues that the trial court failed in its duty to correctly instruct the jury on the "first theory" of section 69—the use of a threat of violence or violence to deter an executive officer from performing his duty—when the trial court did not inform the jury that Atkins "was required to know, or reasonably should have known, that Calhoun was an executive officer."  Atkins contends that the jury instruction for this theory omitted this element of the crime, and the omission was material and not harmless.  Atkins similarly argues that the trial court erred when it answered the jury's question by instructing, "[t]here is no requirement that [t]he Defendant believed Calhoun was an Executive Police Officer," and the error was prejudicial.  Atkins further maintains that his trial counsel was constitutionally ineffective when he failed to object to the trial court's erroneous answer to the jury's question.  Atkins argues that reversal of his conviction of section 69 is required to remedy the trial court's instructional errors and his trial counsel's ineffective assistance.

The Attorney General counters that the first theory of section 69 does not require that the perpetrator of the crime know that the person they are attempting to deter is an executive officer.  In the Attorney General's view, the language of the jury instruction was correct because it tracked the language of the statute, and Atkins waived any challenge to it by failing to object to the wording of the instruction.  Further, even if the trial court committed instructional error in the instruction or in its answer to the jury question, that error was harmless because there was ample evidence that Atkins had violated the "second theory" of section 69 by resisting arrest by force or violence.  In addition, Atkins's trial testimony was "conflicting" and implausible and "no reasonable juror would have believed [Atkins's] assertions."  For the same reasons, any claim that

8

Atkins's trial counsel was constitutionally ineffective fails because there was no legal basis to object to the instructions, and Atkins cannot demonstrate prejudice.

Resolving these competing views requires us to decide whether the first theory of section 69 requires that the perpetrator know that the person he or she is attempting to deter is an executive officer—a question of statutory interpretation that we review de novo. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) "In evaluating these opposing positions, our fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning. If the statutory language is unambiguous, then its plain meaning controls. If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history." (*People v. Ruiz,* (2018) 4 Cal.5th 1100, 1105–1106 (*Ruiz*), citations and internal quotation marks omitted.) With these principles in mind, we begin with the language of the statute.

A. *Elements of Section 69*

Section 69 provides in relevant part, "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment pursuant to subdivision (h) of Section 1170, or in a county jail not exceeding one year, or by both such fine and imprisonment." (§ 69, subd. (a).) Section 69 "sets forth two separate ways in which an offense can be committed. The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by force or violence an officer in the performance of his or her duty." (*People v. Smith* (2013) 57 Cal.4th 232, 240 (*Smith*), citation and internal quotation marks omitted.) The

9

prosecution argued that Atkins had committed a violation of section 69 under both theories.

Atkins does not allege any error in the trial court's instructions related to the "second way"—to use the terminology used by the Supreme Court in *Smith*—of violating section 69.[4]  The Attorney General contends that the principal case upon which Atkins relies, *People v. Hendrix* (2013) 214 Cal.App.4th 216 (*Hendrix*), relates only to this aspect of section 69.  Before reaching the merits of Atkins's argument with respect to the attempting-to-deter portion of section 69, we briefly examine the elements of the actually-resisting prong of the statute.

    1.  <u>Resisting an Executive Officer By Force or Violence</u>

"The second way of violating section 69 expressly requires that the defendant resist the officer 'by the use of force or violence,' and it further requires that the officer was acting lawfully at the time of the offense."  (*Smith*, *supra*, 57 Cal.4th at p. 241.)  The relevant portion of the statute reads, "Every person who . . . knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty, is punishable by [a fine and imprisonment]."  (§ 69, subd. (a).)  By its text, the second way of violating the statute requires that the prosecution prove that defendant "knowingly resist[ed]" the officer by "force or violence."  (*Ibid.*)  This "resistance prong" of section 69 is a general intent crime that requires "only a knowledge that the facts exist which bring the act or omission within the provisions of this code."  (*People v. Rasmussen* (2010) 189 Cal.App.4th 1411, 1419 (*Rasmussen*).)

The Attorney General concedes that the second way of violating section 69 requires "that the perpetrator act with the knowledge that the victim is an officer acting in

---

[4] Some courts refer to the two aspects of section 69 as "attempting to deter" and "actually resisting" an officer.  (See, e.g., *People v. Lopez* (2005) 129 Cal.App.4th 1508, 1530.)  We generally (although not exclusively) use the phrases "first way" and "second way" to reflect the terminology employed by the Supreme Court in *Smith*, *supra*, 57 Cal.4th at pp. 240–241, and in *In re Manuel G.* (1997) 16 Cal.4th 805, 814.

furtherance of his or her duty." Therefore, this method of violating section 69 requires that the defendant know that the person whom he or she is resisting is an executive officer. This aspect of the crime is captured by the third element of the instruction given by the trial court to the jury that stated the prosecution must prove beyond a reasonable doubt that "[w]hen the defendant acted, he knew the executive officer was performing his duty."

By contrast, Atkins's appeal focuses on the "first way" of violating section 69— attempting to deter an officer—and argues that this aspect of the crime similarly requires that the perpetrator know that the person they are trying to deter is an executive officer. On this point, the Attorney General disagrees. We turn now to this question.

2. <u>Attempting by Threats to Deter an Executive Officer</u>

"The first way of violating section 69 'encompasses attempts to deter either an officer's immediate performance of a duty imposed by law or the officer's performance of such a duty at some time in the future.' [Citation] The actual use of force or violence is not required. [Citation] Further, 'the statutory language [of the first clause of section 69] does not require that the officer be engaged in the performance of his or her duties at the time the threat is made." (*Smith*, *supra*, 57 Cal.4th at pp. 240–241, italics omitted.) The relevant portion of the statute reads, "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, . . . is punishable by [a fine and imprisonment]." (§ 69, subd. (a).) Unlike the second way of violating section 69, the text of the statute for the first way does not include the adverb "knowingly." (*Ibid.*)

The statutory elements of the first way and the second way of violating 69 are different. (See *Smith*, *supra*, 57 Cal.4th at pp. 241-242.) Cases involving the second portion of section 69, therefore, are of limited utility in analyzing the first way of violating the statute. (See *Rasmussen*, *supra*, 189 Cal.App.4th at p. 1420.) We have not discovered—and neither party cites—any published case that examines whether, with

11

respect to the first way of committing section 69, the perpetrator must know that the person he or she is attempting to deter is an executive officer. This omission is unsurprising, for, as the Attorney General observes, "the defendant's knowledge of the officer's status as an officer (i.e., officer *qua* officer) . . . almost never arises as a matter of fact."

Atkins relies heavily on *Hendrix*, *supra*, 214 Cal.App.4th at p. 237, for its statement that "Penal Code section 69 requires actual knowledge on the part of the defendant that the person being resisted is an executive officer and that the officer is engaged in the performance of his/her duty." (*Ibid.*) However, *Hendrix*'s reference to "the person being resisted" makes clear that it is discussing the second way of violating section 69. And the facts of *Hendrix*, involving a physical struggle with officers attempting to arrest the defendant, apply to the second way of violating the statute. (*Hendrix* at p. 230.) *Hendrix*, therefore, does not clarify the knowledge, if any, required of the defendant by the attempting-to-deter portion of section 69.

The absence of the word "knowingly" in the first part of violating section 69 is not itself dispositive. "[T]he requirement that, for a criminal conviction, the prosecution prove some form of guilty intent, knowledge, or criminal negligence is of such long standing and so fundamental to our criminal law that penal statutes will often be construed to contain such an element despite their failure expressly to state it." (*In re Jorge M.* (2000) 23 Cal.4th 866, 872.) The California Supreme Court has rejected the contention that "[t]he omission of 'knowingly' from a penal statute indicates that guilty knowledge (scienter) is not an element of the offense," and has, when construing a number of penal statutes, required "guilty knowledge . . . even though the statutes did not expressly require that the defendant act 'knowingly.' " (*People v. Salas* (2006) 37 Cal.4th 967, 979.)

Indeed, a number of courts have held that the first way of violating section 69 "is a specific intent crime, requiring proof of a specific intent to interfere with the executive

12

officer's performance of his or her duties." (*Rasmussen*, *supra*, 189 Cal.App.4th at p. 1420 [collecting cases]; *People v. Gutierrez*, 28 Cal.4th 1083, 1153–1154 [finding error in failing to instruct on the specific intent of section 69 harmless where "there was evidence that defendant harbored the requisite specific intent" because "the threat was intended to deter or prevent [the officers] from performing their duties related to the ongoing search of defendant's cell"].)  But this observation does not resolve the issue here, because a defendant could have a specific intent to interfere with someone without necessarily knowing that that person is an executive officer.  Indeed, the prosecutor in Atkins's trial made that very argument when he stated, "[y]ou don't have to know they're an officer."

For these reasons, we conclude that the text of section 69 does not resolve whether the prosecution must prove that the person attempting to deter an executive officer knows that the individual they seek to deter is an executive officer.  To answer that question, we turn to extrinsic aids in construing the purpose of the statute.  (*Ruiz*, *supra*, 4 Cal.5th at p. 1106.)

Direct legislative history provides little insight.  Section 69 was enacted in 1872 as part of the first codified penal code in California.  (*In re M. L. B.* (1980) 110 Cal.App.3d 501, 503.)[5]  We have not located any legislative history materials (other than the fact of

---

[5] Section 69, in turn, was based on sections 100 and 101 of the New York 1848–1849 draft "Field Codes" of Civil Procedure and Criminal Procedure.  (Commissioners of the Code, The Civil Code of the State of New York (1865) (the Field Code); see *People v. Evans* (2008) 44 Cal.4th 590, 594–595 [describing the influence of the Field Codes on the original criminal statutes enacted in California].)  Section 100 of the draft Field Code provided, "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law, is guilty of a misdemeanor."  (Field Code § 100.)  The "second part" of section 69 corresponds to section 101 of the draft Field Code, which provided, "Every person who knowingly resists, by the use of force or violence, any executive officer, in the performance of his duty, is guilty of a misdemeanor."  (Field Code § 101.)

13

enactment) for section 69. In the absence of more specific legislative history, we refer to case law exploring the objective of the statute.

A number of courts have considered challenges to the first way of violating section 69 premised on the argument that the provision might violate the First Amendment "because it could be used against one who threatened lawful conduct, such as to file a lawsuit or run for elected office." (*People v. Superior Court* (*Anderson*) (1984) 151 Cal.App.3d 893, 895 (*Anderson*).) In *Anderson*, the court applied a narrowing construction to the word "threat" in the statute and limited the first way of violating section 69 to violence or "threats of violence." (*Anderson* at p. 895.) *Anderson* observed that the statute's "central requirement is an attempt to deter the executive officer. Threat (of violence) or violence is merely the means for making the attempt to deter." (*Id.* at p. 897, italics omitted.) *Anderson* concluded that "Section 69 is directed not at the threat itself, but at the attempt to deter executive action." (*Ibid.*)

The Supreme Court relied upon *Anderson* in its own analysis of the first way of violating section 69 in *In re Manuel G.* when it stated, "To avoid the risk of punishing protected First Amendment speech . . . the term 'threat' has been limited to mean a threat of unlawful violence used in an attempt to deter the officer." (*In re Manuel G.* (1997) 16 Cal.4th 805, 814-815 (*Manuel G*).) The Supreme Court described the "statute's purpose" as "prohibiting the use of threats or violence as a tool for attempting to interfere with executive action." (*Id.* at p. 819.)

In light of the statute's "central requirement" that the relevant threat is "an attempt to deter the executive officer," (*Anderson*, *supra*, 151 Cal.App.3d at p. 897, italics omitted), we conclude that the prosecution must prove, as an element of the first way of violating section 69, that the defendant knows that the person he or she is attempting to deter is an executive officer. This construction fulfills the statute's purpose of "prohibiting the use of threats or violence as a tool for *attempting to interfere with executive action*." (*Manuel G.*, *supra*, 16 Cal.4th at p. 819, italics added.) The Attorney

14

General's proposed reading, by contrast, would bypass the statute's central purpose, as a perpetrator who does not know the person they are threatening is an executive officer cannot, by definition, intend to interfere with executive action. After all, it is the intent to interfere with executive action that is proscribed by section 69 and not generalized threats of violence, which are addressed by other provisions in the Penal Code. (See, e.g., § 422, subd. (a).)[6]

We must consider one additional aspect of the knowledge requirement of the first way of violating section 69. Atkins contends that, "[t]he jury should have been told that the prosecution was required to prove that appellant actually knew, *or reasonably should have known*, that Calhoun was an executive officer." (Italics added.) While, for the reasons stated above, we agree that the statute requires that the perpetrator of the crime know that the person they are attempting to deter is an executive officer, we disagree with Atkins that the "reasonably should have known" standard applies.

*Hendrix*, the principal case relied upon by Atkins, states that "Penal Code section 69 requires actual knowledge on the part of the defendant that the person being resisted is an executive officer and that the officer is engaged in the performance of his/her duty." (*Hendrix*, *supra*, 214 Cal.App.4th at p. 237.) However, *Hendrix* does not contain the language "reasonably should have known." (*Ibid.*) Similarly, the pattern jury instruction for the second way of violating section 69 states that the prosecution must prove that "[w]hen the defendant acted, (he/she) knew the executive officer was performing

---

[6] Section 422 states, "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison." (§ 422, subd. (a).)

15

(his/her) duty," (CALCRIM No. 2652), but does not include the "or reasonably should have known" standard. When describing the actually resisting prong of section 69, the Attorney General acknowledges that the crime requires "that the perpetrator act with the knowledge that the victim is an officer acting in furtherance of his or her duty" but does not advocate for the "reasonably should have known" language. The Attorney General further contends that the facts elicited at trial demonstrate Atkins's "obvious knowledge" that Calhoun was a police officer, highlighting that, in the Attorney General's view, Atkins actually knew that Calhoun was an officer.

It is true that caselaw has established that, in the context of the related crime of resisting arrest under section 148(a)[7]— despite the absence of any reference to knowledge in the text of the statute—the perpetrator "must know, or through the exercise of reasonable care should have known, that the person attempting to make the arrest is an officer." (*People v. Lopez* (1986) 188 Cal.App.3d 592, 599.) The holding of *Lopez* has been incorporated into the pattern jury instruction for section 148(a), which requires the prosecution to prove that, "[w]hen the defendant acted, (he/she) knew, or reasonably should have known that [the officer] was [a peace officer] performing or attempting to perform (his/her) duties." (CALCRIM No. 2656.)

Despite the thematic similarity between section 148(a) and section 69, we do not believe that the knowledge requirement of the first way of violating section 69 should be read—absent any textual support or other evidence of legislative intent—to include the "reasonably should have known" language from section 148(a). As far as we are aware, no court has held that such language applies to the knowledge requirement for the second

---

[7] That statute provides in relevant part, "Every person who willfully resists, delays, or obstructs any public officer, [or] peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment." (§ 148, subd. (a)(1).)

way of violating section 69, and the pattern jury instruction does not include it.[8] (CALCRIM No. 2652.) The legal analysis in *Lopez* on the knowledge standard for section 148(a) is cursory and somewhat elliptical, and, in any event, does not convince us that we should embrace a similar result when reading section 69.

In sum, we hold that, to convict an individual of the crime of trying to deter or prevent an executive officer from performing his or her duty—the first way of violating section 69—the prosecution must prove that the defendant willfully and unlawfully used violence or the threat of violence to try to prevent or deter an executive officer from performing the officer's lawful duty; when the defendant acted he or she intended to prevent or deter the executive officer from performing the officer's lawful duty; and when the defendant acted, he or she knew that the person was an executive officer.[9]

We next turn to whether, in light of our conclusion, the trial court committed error when it instructed Atkins's jury.

---

[8] Although the Supreme Court concluded in *Smith* that section 148(a) is "necessarily included within [the] second way of violating section 69," *Smith, supra,* 57 Cal.4th at p. 242, the court did not discuss the distinction between the knowledge elements of section 148(a) and section 69 and certainly did not state that the "reasonably should have known" aspect of the knowledge element of section 148(a) applies to section 69. Instead, *Smith,* focused on the temporal similarities between section 148(a) and the second way of violating section 69. (*Id.* at pp. 241-242.) "It is axiomatic that cases are not authority for propositions that are not considered." (*California Building Industry Association v. State Water Resources Control Board* (2018) 4 Cal.5th 1032, 1043.) *Smith,* therefore, does not affect our conclusion that the first way of violating section 69 does not include the "reasonably should have known" aspect of the knowledge element of section 148(a).

[9] In light of our conclusion, the Advisory Committee on Criminal Jury Instructions may wish to consider revisions to CALCRIM No. 2651. The Advisory Committee may also wish to examine whether CALCRIM No. 2652 could more clearly articulate the knowledge element of the second way of violating section 69. (See *Hendrix, supra,* 214 Cal.App.4th at p. 237.)

17

B. *Instructional Error*

1. The Jury Instructions

Atkins argues that the jury instructions given by the trial court for the first way of committing section 69 omitted the knowledge element that we have concluded the statute requires. "It is well settled that no objection is required to preserve a claim for appellate review that the jury instructions omitted an essential element of the charge." (*People v. Mil* (2012) 53 Cal.4th 400, 409 (*Mil*).) However, "a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language." (*People v. Hudson* (2006) 38 Cal.4th 1002, 1012, internal quotation marks omitted.) Here, the trial court instructed the jury that, in order to find Atkins guilty of the crime, the prosecution must prove beyond a reasonable doubt that "[w]hen the defendant acted, he intended to prevent or deter the executive Officer Jack Calhoun from performing the officer's lawful duty." Because the verb "intended" in the instruction may be read to modify the phrase "executive officer" as well as "prevent or deter" (thus implicitly requiring that the perpetrator know the object of his action is an executive officer), Atkins's challenge to the instruction amounts to a contention that the instruction was incomplete rather than incorrect. As Atkins's trial counsel did not object to the wording of the instruction, Atkins has waived this objection for purposes of appellate review. (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1163.)

2. The Trial Court's Answer to the Jury Question

However, we reach a different conclusion when considering the trial court's answer to the jury's question. During deliberations, the jury sent a note to the trial court asking with respect to the word "intent" in the jury instruction for the first way of violating section 69, "[d]oes intent require that the defendant believed Calhoun was an executive police officer?" In its written answer, the trial court responded, "There is no requirement that [t]he Defendant believed Calhoun was an Executive Police Officer."

18

"We review de novo the legal accuracy of any supplemental instructions provided." (*People v. Franklin* (2018) 21 Cal.App.5th 881, 887.) Atkins's trial counsel did not object to the trial court's proposed response to the jury question, which would ordinarily forfeit Atkins's claim of error. (*People v. Salazar* (2016) 63 Cal.4th 214, 248.) However, "[n]o objection is required to preserve a claim for appellate review that the jury instructions omitted an essential element of the charge." (*Mil*, *supra*, 53 Cal.4th at p. 409.) We have already concluded that the first way of violating section 69 requires that the jury find beyond a reasonable doubt that the defendant knew the individual that he or she intended to prevent or deter from performing his or her duty was an executive officer. Therefore, the trial court's answer to the jury incorrectly described a material element of the offense, and we may review on appeal Atkins's challenge to the supplemental jury instruction. Having concluded that the trial court committed error, we next consider whether the error was harmless.

C. *Prejudice*

As a general matter, "nothing results in more cases of reversible error than mistakes in jury instructions. And if jury instructions are important in general, there is no category of instructional error more prejudicial than when the trial judge makes a mistake in responding to a jury's inquiry during deliberations." (*People v. Thompkins* (1987) 195 Cal.App.3d 244, 252-253.) A trial court's failure to instruct the jury on all of the essential elements of the charged offense is reviewed for harmless error according to the standard set out in *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*). (*Neder v. U.S.* (1999) 527 U.S. 1, 15 (*Neder*).) The *Chapman* test asks "whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " (*Ibid.*)

The California Supreme Court has stated, "*Neder* instructs us to 'conduct a thorough examination of the record. If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same

19

absent the error—for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding—it should not find the error harmless.' " (*Mil*, *supra*, 53 Cal.4th. at p. 417, quoting *Neder*, *supra*, 527 U.S. at p. 19.) For this type of error, "the presumption is that we must reverse, unless we find the error harmless beyond a reasonable doubt." (*In re Loza* (2018) 27 Cal.App.5th 797, 805 (*Loza*), italics omitted.)

After a thorough examination of the record of Atkins's trial, we "cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error." (*Neder*, *supra*, 527 U.S. at p. 19.) Atkins told the jury multiple times that he did not believe that Calhoun was a police officer, and he provided specific reasons for his conclusion. If the jury credited Atkins's testimony, then his testimony alone would support a conclusion that he did not know Calhoun was a police officer. (See CALCRIM No. 301 ["[T]he testimony of only one witness can prove any fact."].) Similarly, Atkins's defense counsel did not concede that Atkins knew Calhoun was a police officer. (Cf. *People v. Merritt* (2017) 2 Cal.5th 819, 831 ["One situation in which instructional error removing an element of the crime from the jury's consideration has been deemed harmless is where the defendant concedes or admits that element."].) Further, "[u]nder *Chapman*, we also take particular note of a prosecutor's closing arguments." (*Loza*, *supra*, 27 Cal.App.5th at p. 805.) The prosecutor told Atkins's jury that Atkins did not have to know that Calhoun was a police officer. The prosecutor said explicitly, "It's not a defense, otherwise there would be an additional element [in the jury instructions] . . . [i]t's not there." These statements highlight the central nature of Atkins's knowledge of Calhoun's identity to Atkins's trial.

The Attorney General maintains that, if the trial court committed instructional error, that error was harmless beyond a reasonable doubt because Atkins's testimony was "not credible." On appeal, however, we are unable to make that determination, for "it is the exclusive province of the trial judge or jury to determine the credibility of a witness."

(*People v. Penunuri* (2018) 5 Cal.5th 126, 142.)  We cannot determine how the jury would have judged Atkins's credibility if it had been properly instructed that, in order to convict him of the first way of committing section 69, the prosecution must prove beyond a reasonable doubt that Atkins knew Calhoun was a police officer.**[10]**  Even if it is "highly unlikely" that the jury would have believed Atkins that he thought Calhoun was a security guard, that is not the applicable legal standard for *Chapman* error.  (*Loza*, *supra*, 27 Cal.App.5th 797, at p. 806.)

The Attorney General urges us to find no prejudice because of the significant evidence elicited in Atkins's trial that he had violated section 69 by actively resisting the officers—the second way of violating the statute.  However, "[w]hen a trial court instructs a jury on two theories of guilt, one of which was legally correct and one legally incorrect, reversal is required unless there is a basis in the record to find that the verdict was based on a valid ground." (*People v. Chiu* (2014) 59 Cal.4th 155, 167.)**[11]**  "Unlike

---

**[10]** The jury's conviction of Atkins under section 148(a) for count 3 does not resolve whether it would have convicted him for section 69 if properly instructed.  The jury instruction for section 148(a) instructed the jury that the prosecution must prove that "[w]hen the defendant acted, he knew, or reasonably should have known, that Officer Jack Calhoun and/or Sgt. Greg Flippo was a peace officer performing or attempting to perform his duties."  Therefore, the jury could have convicted Atkins for count 3 based either on Atkins's conduct toward Flippo, who was not the subject of the section 69 charge, or because they believed Atkins "reasonably should have known" that Calhoun was a peace officer—a legal standard that we have held is inapplicable to the first way of violating section 69.

**[11]** We recognize that the California Supreme Court is currently considering in *People v. Aledamat* (2018) 20 Cal.App.5th 1149, review granted July 5, 2018, S248105, the question "Is error in instructing the jury on both a legally correct theory of guilt and a legally incorrect one harmless if an examination of the record permits a reviewing court to conclude beyond a reasonable doubt that the jury based its verdict on the valid theory, or is the error harmless only if the record affirmatively demonstrates that the jury actually rested its verdict on the legally correct theory?" (Issues Pending Before the California Supreme Court in Criminal Cases (Jan. 25, 2019), <https://www.courts.ca.gov/documents/JAN2519crimpend.pdf> [as of January 30, 2019], archived at:<https://perma.cc/ZYJ5-JTRP>.  Nevertheless, we conclude that the error

with other types of instructional error, prejudice is presumed with this type of error." (*People v. Jackson* (2018) 26 Cal.App.5th 371, 378 (*Jackson*), italics omitted.) We conclude that the Attorney General has not overcome the presumption of prejudice, because we cannot determine that the jury convicted Atkins based solely on the second theory of violating section 69.

The prosecutor argued that Atkins violated section 69 both by attempting to deter Officer Calhoun and by actually resisting him. The prosecutor stated in closing argument, "the uncontested evidence is that the defendant made this threat and also offered the physical resistance in the form of violence and force when he fought with the police. [¶] Whichever way you look at it, theory one or theory two, he's guilty of Count 1." Similarly, the trial court instructed the jury that, "[t]he People have proceeded on two theories to establish a violation of Penal Code section 69 as charged in Count 1" and gave the jury separate instructions for each theory. The jury's question about whether Atkins had to know Calhoun was a police officer was specifically addressed to "[t]heory [o]ne," indicating that the jury was considering that option in its deliberations. As the prosecutor's arguments, the jury instructions, and the jury's question all addressed the first way of violating the statute, we cannot determine that the jury verdict on count 1 was based solely on the second way of violating section 69.[12]

For these reasons, the Attorney General has not persuaded us beyond a reasonable doubt that the instructional error did not contribute to Atkins's verdict. We therefore reverse Atkins's conviction on count 1.[13]

_____

here is not harmless under either of the tests articulated in the question presented in *Aledamat*.

[12] Because the prosecutor's argument and the jury instructions referred to both ways of violating section 69, we do not find dispositive the limitation in the verdict form to the second theory of section 69. (See *Jackson*, *supra*, 26 Cal.App.5th at pp. 379–380.)

[13] In light of this conclusion, we do not reach Atkins's argument that his trial counsel was constitutionally ineffective for failing to object to the trial court's answer to the jury question about section 69.

### III.  DISPOSITION

The conviction for section 69 is reversed.  Atkins's sentence is vacated in its entirety, and the matter is remanded to the trial court for a possible retrial on count 1.  If the prosecutor elects not to retry Atkins, or at the conclusion of any retrial, the trial court is to resentence Atkins.

_____
DANNER, J.

WE CONCUR:


_____
GREENWOOD, P.J.




_____
GROVER, J.




*People v. Atkins*
**H044999**

| | |
|---|---|
| Trial Court: | Santa Cruz County Superior Court, Case No.: 17CR01497 |
| Trial Judge: | Hon. Stephen S. Siegel |
| Attorneys for Plaintiff/Respondent: The People | Xavier Becerra Attorney General of California Gerald A. Engler Chief Assistant Attorney General Jeffrey M. Laurence Senior Assistant Attorney General Eric D. Share Supervising Deputy Attorney General John H. Deist Deputy Attorney General |
| Attorney for Defendant/Appellant: Randall Atkins | Under appointment by the Court of Appeal Brian Curtis McComas |