Filed 9/29/21  P. v. Minjarez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL OSCAR MINJAREZ,<br><br>Defendant and Appellant. | E075587<br><br>(Super.Ct.No. INF1901616)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  James S. Hawkins, Judge. (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

James M. Kehoe, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

1

## I.  INTRODUCTION

A jury found defendant and appellant Michael Oscar Minjarez guilty as charged of attempting to deter, or resisting, by force or violence, an executive officer in the performance of the officer's duty.  (Pen. Code, § 69.)[1]  The trial court found that defendant had two prior strike convictions (§ 667, subds. (c), (e)(1)), and sentenced him to four years in state prison (the middle term of 2 years, doubled, based on 1 of the prior strike convictions).

In this appeal, defendant raises two claims of prejudicial trial error: (1) insufficient evidence supports the *knowledge element* of his conviction for violating section 69—that is, he claims insufficient evidence shows he knew that the officers he attempted to deter, or resisted, were police officers; and (2) a video taken by the body camera of one of the officers who did not testify, Sergeant C., was erroneously admitted because it was not authenticated.  We conclude that substantial evidence supports the knowledge element of defendant's conviction for violating section 69, and that any error in admitting Sergeant C.'s body-camera video was harmless.  Thus, we affirm the judgment.

## II.  BACKGROUND

On September 11, 2019, P.D. was attending a family gathering at his daughter's house in Desert Hot Springs.  Around 7:30 p.m., P.D. was in the garage of the house, fixing his daughter's car in the presence of other house guests, including several of his

---

[1]  Unspecified statutory references are to the Penal Code.

family members and friends, when defendant came running into the garage toward P.D.'s wife and younger children. Neither P.D. nor any of the other people in the garage had seen defendant before.

P.D.'s wife and children began screaming, and P.D. rushed over and stood in front of them so they would not be hurt. P.D. and another house guest, G.R., tried to hold defendant back. After P.D. and G.R. told him to leave, defendant became physically aggressive. He charged at P.D. and G.R. and was "throwing punches" at them. A third guest tried to help P.D. and G.R. stop defendant. P.D.'s son-in-law called 911.

For around 20 minutes before police arrived, P.D., G.R., and the third guest fended off defendant, and defendant was repeatedly asked to leave; but he would not leave, and he continued to be aggressive. P.D. and G.R. thought defendant might have been under the influence of drugs. P.D. saw that defendant was sweating profusely and "was not all there." Defendant did not say a word during his entire encounter with P.D., G.R., and the other guests, and he did not seem to be listening to anyone. But, he also did not seem to have trouble maintaining his balance.

P.D. and G.R. further testified that defendant would not listen to the police officers after they arrived. Defendant refused the officers' commands to get out of the garage. P.D. also testified that, after the officers told defendant to "put his hands back," defendant stepped out of the garage, went toward the officers, and began "throwing punches" at the officers. The officers tried but were unable to calm defendant down, and the officers "had to call for backup."

3

City of Desert Hot Springs Police Officer P. was the first officer to respond to the scene. Officer P. arrived in a black and white Ford Explorer with the "Desert Hot Springs Police" insignia on both sides of his vehicle. Officer P. did not turn on his vehicle's emergency lights or siren, but he turned on the vehicle's floodlights and parked the vehicle close to the home. It was dark outside and there were no street lights, but the garage was lighted.

Officer P. did not announce himself as law enforcement, but he was wearing his police uniform. His police badge and name were on the front of his shirt; he was also wearing police badges on both of his shoulders; and he was visibly carrying a service pistol, a taser, pepper spray, a baton, and handcuffs on his belt. G.R. saw "right away" that Officer P. was a police officer.

When he first arrived at the scene, Officer P. saw that defendant was "throwing his arms up erratically and making weird gestures with his hands." As he walked toward the driveway, Officer P. heard someone say, " 'He doesn't belong here. He's trying to fight people.' " Officer P. walked up to defendant and told him to "turn around" toward Officer P. Because he did not know whether defendant was armed, Officer P. was trying to get defendant away from the people in the garage. Defendant turned toward Officer P. but began backing away. Next, Officer P. twice told defendant to get on the ground, but defendant did not comply. Officer P. tried to "deescalate" the situation by urging defendant to "chill out" and "relax."

Another officer, Sergeant C., arrived around one minute after Officer P. arrived and assisted Officer P. Defendant "swatt[ed]" at Officer P.'s hands and tried to punch

4

both Officer P. and Sergeant C. Officer P. twice tried to tase defendant, after warning defendant that he would be tased; but the taser did not work, and defendant continued to struggle with the officers. Officer P. struck defendant on his torso and used "knee strikes" to get defendant on the ground.

Both Officer P. and Sergeant C. were wearing body cameras, which audio- and video-recorded their encounter with defendant, but Officer P's camera fell off when they took "[defendant] to the ground" by a car in the street in front of the house. Defendant can be heard on Officer P.'s body-camera recording, saying, among other things, "I see this shit"; "You guys are . . . doing this on purpose"; "Fuck you, bitch"; "I see you"; "You're gonna make me look like I'm crazy, fool"; "There's a conspiracy here, fool"; "I'm not playing, fool. Shoot me"; "I'm not crazy, I'm not crazy"; "You're gonna make me . . . twist my finger"; "You're acting like I'm crazy . . . get the fuck off me . . . I hear you"; and "I see exactly what . . . you're doing." The same statements were captured on Sergeant C.'s body-camera recording.

During his struggle with the officers, defendant was kicking his feet at the officers, and he tried to grab Officer P.'s taser. After defendant was taken to the ground, Officer P. again used his taser, and this time the taser worked. Meanwhile, two more police officers arrived, and together the four officers were able to handcuff defendant. Defendant was then placed in the back seat of a police car. There, he continued "yelling and screaming," and, after a time, he began kicking the car doors and banging his head against the back seat divider. Around six or seven minutes elapsed from the time

5

Officer P. arrived until the time defendant was placed in the police car. Defendant never referred to any of the officers as police officers.

According to Officer P., defendant's behavior during the incident was consistent with a person who was under the influence of a controlled substance, but it was also consistent with a person who was "completely sober" but "just angry and frustrated." Defendant spoke in coherent sentences, and Officer P. was unable to determine whether he was under the influence. Officer P. had several prior contacts with defendant and, during those contacts, defendant was "pretty calm." His conduct during the current incident was "very different" than his conduct during the prior contacts.

III. DISCUSSION

A. *Substantial Evidence Supports the Knowledge Element of Defendant's Conviction for Violating Section 69*

Section 69 provides: "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment pursuant to subdivision (h) of Section 1170, or in a county jail not exceeding one year, or by both such fine and imprisonment."

Section 69 can be violated in two ways: (1) by attempting to deter or prevent an executive officer from performing a duty imposed by law, and (2) by resisting, by force or violence, an officer in the performance of his or her duty. (*People v. Smith* (2013) 57 Cal.4th 232, 240-241; *In re Manuel G.* (1997) 16 Cal.4th 805, 814.) Both ways of

6

violating section 69 require the defendant to *know* that the executive officer that the defendant tried to deter or prevent, *or* resisted, is an executive officer. (*People v. Atkins* (2019) 31 Cal.App.5th 963, 975-979.)

The jury here was instructed on both ways of violating section 69, including the knowledge element. (CALCRIM No. 2651 (trying to prevent an executive officer from performing duty) and No. 2652 (resisting an executive officer in performance of duty) The jury was further instructed that a peace officer is an executive officer, that a sworn member of the City of Desert Hot Springs Police Department is a peace officer, and that the jury could not find defendant guilty of violating section 69 unless it unanimously agreed on which way defendant violated the statute. The jury returned two guilty verdicts, finding defendant guilty of both ways of violating section 69.

Defendant claims the record contains insufficient evidence to support the knowledge element of each way of violating section 69. He claims "there was insufficient credible evidence that [he] knew that the people he was attempting to deter or prevent, or resisted, were police officers." Thus, he claims his conviction for violating section 69 must be reversed. We disagree.

In reviewing a claim that insufficient evidence supports a criminal conviction, our task is to " ' " 'review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' " (*People v. Brooks* (2017) 3 Cal.5th 1,

57.)  "Substantial evidence includes circumstantial evidence and any reasonable inference drawn from that evidence."  (*In re Michael D.* (2002) 100 Cal.App.4th 115, 126.)

In reviewing the record for substantial evidence, we "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence."  (*People v. Houston* (2012) 54 Cal.4th 1186, 1215.)  Reversal "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' "  (*People v. Bolin* (1988) 18 Cal.4th 297, 331.)

Defendant claims the evidence shows he did not know that he was deterring or resisting peace officers, given that witnesses described him as "sweating profusely," as " 'not all there,' " and as appearing to be under the influence of a controlled substance. He argues his "bizarre behavior clearly indicated that he was unaware of what was going on."  Indeed, when he was in the garage, he did not appear to be listening to anyone, and his behavior during the entire incident did not make sense.  Officer P. believed that "there was something wrong with him."

Notwithstanding the evidence that defendant was "out of it" and did not know what was going on around him, substantial evidence shows that defendant could see, was coherent and, therefore, knew that the people he attempted to deter and resist, beginning with Officer P., were peace officers.  Defendant was able to control his movements and communicate coherently during his struggle with the officers, indicating that he knew that the officers whose commands he refused and fought with were peace officers.

As the People point out, multiple visual indicators showed that Officer P. was a City of Desert Hot Springs police officer.  G.R., testified that "you knew right away" as

8

soon as Officer P. arrived, that Officer P. was a police officer. Although Officer P. did not announce that he was a police officer, he was wearing a police officer's uniform, and he was driving a black and white police vehicle with the "Desert Hot Springs Police" insignia on both sides. His Desert Hot Springs Police badge and his name were visible on the front of his shirt; he was wearing Desert Hot Springs Police badges on his shoulders; and he was visibly carrying a service pistol, a taser, pepper spray, and baton, and handcuffs on his belt. Although it was dark outside, the garage was lighted, and defendant turned toward Officer P. when Officer P. approached him near the garage and told him to "turn around." At this point, nothing was obstructing defendant's view of Officer P., and defendant began to back away from the officer almost as soon as he turned toward the officer. This showed that defendant could see and, therefore, knew that Officer P. was a police officer.

Substantial evidence also shows that defendant was coherent and knew what was going on around him, including that he was attempting to deter, and was forcibly resisting, peace officers. After he refused to comply with Officer P.'s commands to get on the ground, and Sergeant C. arrived, defendant engaged in a struggle with Officer P. and Sergeant C. Defendant first swatted at Officer P's hands, then he tried to punch Officer P. and Sergeant C., and he tried to grab Officer P.'s taser after the two other officers arrived and joined the struggle. He was heard on Officer P.'s body-camera video, saying things that showed he was coherent and knew that the officers he was attempting to deter, and was forcibly resisting, were peace officers. Among other things, he said, "This is a conspiracy," "I'm not crazy," "I see you," and "I see exactly what . . .

9

you're doing." Moreover, defendant's statement, "You're gonna make me look like I'm crazy, fool," demonstrates that he not only knew that he was deterring and resisting peace officers, but he knew the officers were recording him.

All of this evidence showed that defendant could see, was coherent and, therefore, knew that the officers whom he was deterring and resisting were peace officers. Thus, substantial evidence supports the knowledge element of defendant's conviction for violating section 69. (Cf. *People v. Hendrix* (2013) 214 Cal.App.4th 216, 221-222, 237, 248-253 [erroneous admission of other crimes evidence prejudicial to conviction for knowingly resisting peace officer (§ 69), where evidence the defendant *knew* he was resisting a peace officer was "not overwhelming" in part because the defendant was pepper sprayed before he resisted, was intoxicated, and spoke "incoherent gibberish"].)

B. *Any Error in Admitting Sergeant C.'s Body-camera Video Was Harmless*

Sergeant C. was unable to testify at trial due to illness, and he was therefore not available to authenticate the video of his encounter with defendant, which was taken by his body camera. Officer P. had a family emergency after he testified, and he was also not available to authenticate Sergeant C.'s body-camera video. Over defendant's objection, the court admitted Sergeant C.'s body- camera video into evidence, based on the testimony of another City of Desert Hot Springs Police Officer, Sergeant S., who was not present during the incident.

Defendant claims that Sergeant C.'s body-camera video was erroneously admitted because it was not sufficiently authenticated by Sergeant S.'s testimony or other evidence. He specifically claims that Sergeant S.'s testimony did not show that Sergeant

10

C's body-camera video was what it purported to be: a recording of Sergeant C.'s September 11, 2019 encounter with defendant. (Evid. Code, §§ 1400, 1401.) We conclude that any error in admitting Sergeant C.'s body-camera video was harmless. Thus, we do not address the merits of defendant's claim that Sergeant C.'s body-camera video was erroneously admitted because it was not authenticated.

Under the Evidence Code, a writing is required to be authenticated before it may be received in evidence (Evid. Code, § 1401), and writings include photographs and video recordings (Evid. Code, § 250; *People v. Goldsmith* (2014) 59 Cal.4th 258, 266). "Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law." (Evid. Code, § 1400.) "A photograph or video recording is typically authenticated by showing it is a fair and accurate representation of the scene depicted." (*People v. Goldsmith*, at p. 267.)

If a writing, including a photograph video recording, is erroneously admitted due to a failure to demonstrate its authenticity, we must determine whether it is reasonably probable that the defendant would have realized a more favorable result had the writing been excluded. (*People v. Watson* (1956) 46 Cal.2d 818, 836; see *People v. Beckley* (2010) 185 Cal.App.4th 509, 517.) Here, it is not reasonably probable that defendant would have realized a more favorable result, including acquittal of the section 69 charge, had the court not admitted Sergeant C.'s body-camera video.

The testimony of P.D., G.R., and Officer P. showed beyond a reasonable doubt that defendant violated section 69 by (1) attempting to deter or prevent Officer P. and the

11

other officers in the performance of their lawful duties, and by (2) resisting, by force or violence, Officer P. and the other officers, knowing that the officers were peace officers. P.D. and G.R. witnessed defendant's interactions with Officer P. and the other officers. Their testimony, together with Officer P.'s testimony and body-camera video, overwhelmingly showed that defendant would not obey the officers' commands, tried to punch Officer P. and Sergeant C., and kicked his feet as he struggled with the officers.

To be sure, Sergeant C.'s body-camera video was slightly longer than Officer P.'s body-camera video and showed additional details of defendant's actions from Sergeant C.'s perspective. But all of defendant's acts of deterrence and resistance, and his knowledge that the people whom he was deterring and resisting were police officers, were overwhelmingly shown by other evidence. Thus, it is not reasonably probable that defendant would have realized a more favorable result, including acquittal of the section 69 charge or conviction of the lesser offense of violating section 148, had Sergeant C.'s body-camera video been excluded.

## IV.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
J.

We concur:

RAMIREZ _____
P. J.

McKINSTER _____
J.