Filed 3/10/25

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E082722 |
| v. | (Super.Ct.No. ACRAS2200043) |
| PROSPERO GUADALUPE SERNA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Charles J. Umeda, Joseph B. Widman, and Erin K. Alexander, Judges. Affirmed.

Michele Assael-Shafia for Defendant and Appellant.

Jason Anderson, District Attorney, Eric M. Ferguson and Audrey Berthelsen, Deputy District Attorneys, for Plaintiff and Respondent.

A jury found defendant Prospero Guadalupe Serna guilty of two misdemeanors: knowingly resisting arrest (Pen. Code,[1] § 69), and willfully resisting, delaying, or obstructing a peace officer (§ 148, subd. (a)(1); hereafter section 148(a)(1)). On appeal

---

[1] All undesignated statutory references are to the Penal Code.

to the Appellate Division of the Superior Court of San Bernardino County, defendant claimed his attorney rendered ineffective assistance of counsel by not seeking to admit defendant's mental health records to negate the knowledge requirements for the two offenses and by failing to request the trial court instruct the jury with CALCRIM No. 3428 that evidence of a mental defect was relevant to its determination of whether defendant formed the requisite intent for the offenses. Because evidence of mental disease, defect, or disorder is only admissible to show failure to form a specific intent (see § 28, subd. (a)), and case law had established sections 69 and 148(a)(1) are general intent crimes, the appellate division held defendant's attorney did not provide deficient representation by not seeking to introduce mental health records and not requesting the instruction.

Recognizing a split in authority on the question of whether section 148(a)(1) includes an element of the perpetrator's actual knowledge that the person they resisted, delayed, or obstructed was a peace officer (compare *In re A.L.* (2019) 38 Cal.App.5th 15 (*A.L.*) [holding § 148(a)(1) does include an actual knowledge requirement] with *People v. Mackreth* (2020) 58 Cal.App.5th 317 (*Mackreth*) [disagreeing with *A.L.*, and holding § 148(a)(1) does not require actual knowledge]), the appellate division granted a request from defendant to certify his appeal for transfer to this court, and limited the issue to be decided as follows: "Does Penal Code section 148, subdivision (a)(1) require that a defendant have actual knowledge that the person being resisted is an executive officer?" Because we concluded transfer of the appeal was necessary to settle an important

2

question of law, this court granted the transfer and directed the parties to submit briefs limited to the question as certified by the appellate division.

We find the analysis in *Mackreth* to be persuasive, decline to follow *A.L.*, and conclude section 148(a)(1) does not require the defendant knew they resisted, delayed, or obstructed a police officer. It is enough for a jury or trier of fact to find the defendant knew *or* reasonably should have known the person they resisted was a police officer. Therefore, we affirm the judgment.

I.

FACTS AND PROCEDURAL BACKGROUND[2]

On August 21, 2021, at approximately 8:30 a.m., California Highway Patrol Officer Holguin was on duty providing security and protection for Caltrans as they performed weed abatement near the freeway. The officer was in a marked patrol vehicle and in uniform. Officer Holguin was informed there was a pedestrian ahead who was walking within the traffic lanes. The officer encountered defendant and used his vehicle to block traffic so defendant would not be struck by oncoming traffic. The officer asked defendant to move over to the right shoulder and defendant complied.

The officer attempted to park his patrol unit, but defendant continued walking northbound. Defendant appeared agitated and had blood on his hands. Defendant indicated he did not need help and then stated something to the effect of "I'm God." As

---

[2] The underlying facts are irrelevant to the purely legal issue we decide. We adopt the statement of facts from the appellate division's unpublished per curiam opinion. (See *People v. Velador* (2024) 103 Cal.App.5th 687, 691, fn. 1.)

3

defendant started walking back into the lanes, the officer got out of his patrol car and placed himself in front of defendant. The officer ordered defendant to stop and placed his right hand on defendant's chest, but defendant pushed the officer back.

The officer grabbed his taser and elevated his demeanor. Defendant backed off but continued walking along the shoulder. The officer repeated this process several times, with him following defendant in his vehicle, exiting the vehicle, and trying to keep defendant out of the lanes. However, defendant pushed the officer several more times throughout the encounter. The officer requested a backup unit, who then arrived on scene and created a break in traffic.

Defendant ran back into the traffic lanes, and, after refusing the officer's orders to stop, the officer deployed his taser. The officer jumped on defendant, but defendant fought through the taser cycle, jumped up, and almost knocked the officer over. The officer deployed his taser once more, but it had little effect on defendant. As defendant stepped back, he fell, and the officer got on top of him once again. The officer was finally able to pin defendant down with the help of a second officer. However, defendant continued to resist, and the officers were not able to secure handcuffs on him.

After several minutes of struggling, four San Bernardino police officers arrived on scene to assist with defendant's detention. Defendant was finally placed in handcuffs and was transported to the hospital in an ambulance. After Officer Holguin informed defendant that he was being detained for obstructing, defendant told him he wasn't the

4

police. In response, the officer explained to him that California Highway Patrol Officers are the police.

On cross-examination, Officer Holguin testified defendant's statements made him believe that defendant was possibly suffering a mental health crisis. Although defendant was not booked for any crime on the day of his arrest, the officer recommended charges be filed. The officer also testified that defendant did not attempt to run into traffic when he first drew his taser, indicating he understood the officer's commands.

Without objection, the trial court instructed the jury with CALCRIM No. 2656 on the elements for section 148(a)(1), including the requirement that defendant "knew, or reasonably should have known" he resisted, delayed, or obstructed a police officer. The jury found defendant guilty of resisting an executive officer (§ 69) and of willfully resisting, delaying, or obstructing a peace officer (§ 148(a)(1)). The trial court sentenced defendant to summary probation for one year and to serve 180 days in county jail, stayed pending receipt of a medical report.

## II.

## DISCUSION

A. *The Offense of Willfully Resisting, Delaying, or Obstructing a Police Officer Does Not Require The Defendant Actually Know The Person Being Resisted is a Police Officer.*

Relying heavily on *A.L.*, *supra*, 38 Cal.App.5th 15, defendant argues, as a matter of statutory interpretation, section 148(a)(1) includes the element the defendant knows

5

they are resisting, delaying, or obstructing a peace officer.[3]  And, because the jury was not instructed on the element of actual knowledge, defendant contends the judgment must be reversed.  Following the contrary holding in *Mackreth*, *supra*, 58 Cal.App.5th 317, the People argue the jury was properly instructed a defendant violates section 148(a)(1) if he knew *or* should have known the person being resisted was a police officer.  We agree with the People.

Whether section 148(a)(1) includes the element of actual knowledge is a matter of statutory interpretation we review de novo.  (*People v. Walker* (2024) 16 Cal.5th 1024, 1031.)  "'"'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.  [Citation.]  We begin by examining the statute's words, giving them a plain and commonsense meaning.'"'  [Citation.]  '[W]e consider the language of the entire scheme and related statutes, harmonizing the terms when possible.'"  (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.)

---

[3]  Defendant wisely does not argue actual knowledge is a constitutionally mandated element of section 148(a)(1).  "There is no constitutional impediment to the enactment of a law which requires something less than actual knowledge in the mind of the perpetrator."  (*People v. Mathews* (1994) 25 Cal.App.4th 89, 98.)  For example, various special circumstances and offenses expressly require the defendant knew or reasonably should have known the victim was a peace officer or custodial officer.  (See §§ 190.2, subd. (a)(7)-(9), 241, subd. (c), 241.1, 241.4, 243, subds. (b)-(c), 243.1, 244.5, subd. (c), 245, subds. (c)-(d), 245.3, 245.5, subds. (a)-(c), 417, subd. (c), 417.26, subd. (a).)  Our Supreme Court has rejected various constitutional challenges to the absence of an actual knowledge requirement in those types of statutes.  (*People v. Thomas* (2012) 53 Cal.4th 771, 816-817; *People v. Brown* (1988) 46 Cal.3d 432, 444 *People v. Rodriguez* (1986) 42 Cal.3d 730, 780-783.)

Our duty "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." (Code Civ. Proc., § 1858; see *People v. Guzman* (2005) 35 Cal.4th 577, 587.) The plain meaning of the statute controls unless the statutory language is ambiguous, in which case we may consult extrinsic sources such as the apparent object of the statute and its legislative history to discern the Legislature's intent. (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1369.)

On its face, section 148(a)(1) includes no knowledge element whatsoever: "Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician, as defined in Division 2.5 (commencing with Section 1797) of the Health and Safety Code, in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment."

The key term in section 148(a)(1) for our purpose is "willfully." "'[T]he meaning of the term "willfully" varies depending on the statutory context.'" (*People v. Valdez* (2002) 27 Cal.4th 778, 788.) "''Willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, to injure another, or to acquire any advantage." (§ 7, subd. (b)(1).) "Willfully" is usually synonymous with

7

"intentionally." (*In re Rolando S.* (2011) 197 Cal.App.4th 936, 941; see *People v. Davis* (2005) 126 Cal.App.4th 1416, 1435.) "[T]he defendant's conduct must be intentional, not accidental. The defendant must know what he or she is doing in the sense that his or her actions must be volitional." (*People v. Zgurski* (2021) 73 Cal.App.5th 250, 263.)

As our Supreme Court has explained, "'[T]he terms "willful" or "willfully," when applied in a penal statute, require only that the illegal act or omission occur "intentionally," without regard to motive or ignorance of the act's prohibited character.' [Citation.] 'Willfully implies no evil intent; "'it implies that the person knows what he is doing, intends to do what he is doing and is a free agent.' [Citation.]"' [Citation.] The use of the word 'willfully' in a penal statute usually defines a general criminal intent, absent other statutory language that requires 'an intent to do a further act or achieve a future consequence.'" (*People v. Atkins* (2001) 25 Cal.4th 76, 85.)

Consistent with the analysis in *Atkins*, the courts have held section 148(a)(1) "'is a general intent crime, proscribing only the particular act (resist, delay, obstruct) without reference to an intent to do a further act or achieve a future consequence.'" (*People v. Christopher* (2006) 137 Cal.App.4th 418, 431, quoting *In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1329.)

        i.    *People v. Lopez.*

In *People v. Lopez* (1986) 188 Cal.App.3d 592 (*Lopez*), the defendant challenged his conviction under section 148 claiming his jury was not instructed the offense included the element that he knew he was fleeing from a police officer and not someone else. (*Id.*

8

at p. 595.) Analogizing section 148 to the offense of knowingly resisting arrest by use of force or a weapon in violation section 834a, the defendant argued "substantive due process requires that knowledge be an implied element in [section 148]. Otherwise, people could be found guilty of resisting arrest without realizing that someone is in fact a police officer. This would be especially true for officers working under cover." (*Id*. at p. 596.) The People responded the evidence showed the defendant "knew or should have known" he fled from a police officer, but in any event the jury was properly instructed with the definition of the term "willful" and "[i]t is sufficient that a defendant intends to do an act without a separate showing of a specific intent to violate the law or of knowledge that an act is a crime." (*Id*. at pp. 596-597.)

In rejecting the People's argument, the court stated, "Mens rea and actus reas must come together to make an act a crime under Penal Code section 20. Merely running away from someone is not resisting arrest. Running from a plainclothes officer who does not identify that he or she is an officer could not, for instance, be a crime. The state is confusing the concept of general intent crimes with the requirement of knowledge. The two terms are not the same. Knowledge does not refer to the defendant's awareness that what he or she does is culpable or criminal in nature. Knowledge refers to awareness of the particular facts proscribed in criminal statutes." (*Lopez*, *supra*, 188 Cal.App.3d at p. 598.) "General intent crimes proscribe particular acts. Reference is not made to the actor's intent to achieve further acts or future consequences as to the restricted action.

9

There must be, however, awareness by the actor that the illegal act is being done within the terms of the statute.  This is knowledge, not specific intent." (*Ibid.*)

"[T]he act of fleeing from an officer trying to make a lawful arrest is proscribed.  Before one can be found culpable, however, he or she must know, or through the exercise of reasonable care should have known, that the person attempting to make the arrest is an officer.  Otherwise the statute is overbroad.  It would make mere flight or fear of capture an offense." (*Lopez*, *supra*, 188 Cal.App.3d at p. 599.)  Therefore, the court held section 148 should be read to include a knowledge requirement like the one contained in section 834a.  "The standard applied here is not the subjective belief by the defendant that he was being chased by someone other than a police officer," but "that of actual knowledge or what a reasonable person should have known.  This is an objective standard for measuring the knowledge of the actor." (*Ibid.*)

The knowledge requirement as first articulated in *Lopez*, *supra*, 188 Cal.App.3d 592 was incorporated into the pattern jury instruction for section 148(a)(1), first in CALJIC No. 16.102 and currently in CALCRIM No. 2656.  (See *People v. Atkins* (2019) 31 Cal.App.5th 963, 978 ["The holding of *Lopez* has been incorporated into the pattern jury instruction for section 148(a)"].)  CALCRIM No. 2656 requires the jury to find that, "[w]hen the defendant acted, (he/she) *knew, or reasonably should have known*, that

\<insert name, excluding title\> was (a/an) (peace officer/public officer/emergency medical technician) performing or attempting to perform (his/her) duties."[4]  (Italics added.)

And, until recently, the courts of this state, including our Supreme Court, have unanimously included the holding from *Lopez* when stating the elements of the offense. "The legal elements of that crime are as follows:  '"(1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant *knew or reasonably should have known* that the other person was a peace officer engaged in the performance of his or her duties."'"  (*Yount v. City of Sacramento* (2008) 43 Cal.4th 885, 895, quoting *In re Muhammed C.*, *supra*, 95 Cal.App.4th at p. 1329, italics added; accord, *In re T.F.-G.* (2023) 94 Cal.App.5th 893, 904; *In re Chase C.* (2015) 243 Cal.App.4th 107, 113; *People v. Christopher*, *supra*, 137 Cal.App.4th at p. 431; *People v. Simons* (1996) 42 Cal.App.4th 1100, 1108-1109.)

  ii.  *A.L.*

In *A.L.*, *supra*, 38 Cal.App.5th 15, a minor challenged an order sustaining a wardship petition after the juvenile court found, inter alia, she resisted a police officer in

---

  **4** Recognizing the split in authority at issue here, the bench notes to CALCRIM No. 2656 advise: "If the trial court agrees with *Mackreth*, give the instruction as written. If the trial court agrees with *A.L.*, modify the instruction."  (Judicial Council of Cal., Crim. Jury Instns. (2024 ed.) Bench Notes to CALCRIM No. 2656, p. 552; see *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 456 [when faced with Court of Appeal split in authority, the trial court "must make a choice between the conflicting decisions."].)

11

violation of section 148(a)(1). The minor argued the juvenile court erred by not considering her state of mind at the time of the offense. (*A.L.*, at pp. 19-20.)

A panel of the Sixth Appellate District began by observing, "Willfully is most naturally read as synonymous with knowingly, because '"the term 'willfully' . . . imports a requirement that 'the person knows what he is doing.'"' (*People v. Garcia* (2001) 25 Cal.4th 744, 752, quoting *People v. Honig* (1996) 48 Cal.App.4th 289, 334.) When 'willfully' is the mental state required for a crime, the perpetrator must have actual knowledge of the relevant facts. (*In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1437.) Therefore, section 148, subdivision (a)(1) . . . requires that a defendant have actual knowledge he or she is resisting an officer in the performance of duty." (*A.L.*, *supra*, 38 Cal.App.5th at p. 22.)

The *A.L.* court expressly disagreed with the holding in *Lopez*, *supra*, 188 Cal.App.3d 592. "The *Lopez* court held, correctly, that knowledge is an element of section 148, subdivision (a)(1) and the instruction for that charge 'should include knowledge as an element.' (*People v. Lopez*, *supra*, [188 Cal.App.3d] at pp. 599-600.) But in our view the court then inaccurately stated what would satisfy the element: 'Before one can be found culpable, however, he or she must know, or through the exercise of reasonable care should have known, that the person attempting to make the arrest is an officer.' (*Id*. at p. 599.) As we have discussed [in the context of the minor's challenge to the finding she battered a peace officer in violation of section 243, subdivision (b)], that standard describes criminal negligence, not willfulness. *Lopez* is

12

correct in that the crime of resisting an officer requires proof of a defendant's state of mind as an element. But 'willfulness' requires proof of actual and not merely constructive knowledge." (*A.L.*, *supra*, 38 Cal.App.5th at p. 23.)

The court criticized *Lopez* for adopting the knowledge requirement from section 834a. "As this court noted in *People v. Atkins*, *supra*, 31 Cal.App.5th 963, 979, the analysis used in *Lopez* to arrive at the knowledge standard for section 148, subdivision (a) is 'somewhat elliptical.' *Lopez* appears to have adopted a criminal negligence standard from the language of Penal Code section 834a, a statute imposing a generalized duty to not resist arrest: 'If a person has knowledge, or by the exercise of reasonable care, should have knowledge, that he is being arrested by a peace officer, it is the duty of such person to refrain from using force or any weapon to resist such arrest.' But section 834a is a different statute. Its language should not be imported to define the offense created by section 148, subdivision (a)(1), particularly when the Legislature specified a different mental state—willfulness—as the intent element for that offense. (See *In re Jennings* [(2004)] 34 Cal.4th [254,] 275 [when the Legislature expressly includes a scienter requirement, a court must not read that element out of the statute and ease the prosecution's burden of proof].) Indeed, since the Legislature used the language of criminal negligence in section 834a (and also in § 243, subd. (b)) but decided to use different language in section 148, subdivision (a)(1), we must respect that choice. (*In re Jennings*, *supra*, 34 Cal.4th 254, 273, quoting *People v. Norwood* (1972) 26 Cal.App.3d 148, 156 ['"It is a settled rule of statutory construction that where a statute, with

reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed with reference to the different statutes.'"].)  Regardless of whether it is desirable from a policy perspective to make criminal negligence the standard for resisting an officer, 'we must give effect to the statute as written, not as it might have or should have been written.'  (*In re Jerry R.*, *supra*, 29 Cal.App.4th at p. 1439.)"  (*A.L.*, *supra*, 38 Cal.App.5th at pp. 23-34, fn. omitted.)

Therefore, *A.L.* held "[a] defendant's actual knowledge that an officer is engaged in the performance of a duty is required by the plain language of [section 148(a)(1)]."[5] (*A.L.*, *supra*, 38 Cal.App.5th at p. 25.)

iii.    *Mackreth*.

The following year, another panel of the Sixth District decided *Mackreth*, *supra*, 58 Cal.App.5th 317.  The defendant there challenged his misdemeanor conviction under section 148(a)(1).  Relying on *A.L.*, *supra*, 38 Cal.App.5th 15, he argued the trial court erred by instructing the jury it could convict him if it found the defendant "knew or 'should have known' that the person he resisted was a police officer."  (*Mackreth*, at

_____

[5] The *A.L.* court observed that, "while actual knowledge is a higher standard than criminal negligence, both standards are proven in much the same way:  Circumstantial evidence tending to show that a reasonable person would have known an officer was engaged in the performance of duty will likewise tend to show that a particular defendant was aware of that fact.  The only difference when actual knowledge is required is that if a defendant denies knowing the relevant facts, the trier of fact must judge the credibility of that statement.  Using actual knowledge as the intent element for Penal Code section 148, subdivision (a)(1) comports with the statutory language and does not present any undue obstacle to its enforcement."  (*A.L.*, *supra*, 38 Cal.App.5th at pp. 24-25.)

p. 321.)  *Mackreth* held "[a]pplication of the rules of statutory construction to section 148, subdivision (a)(1) inescapably leads to a conclusion that the Legislature did not intend for its use of the word 'willfully' here to create a requirement of 'actual knowledge.'"  (*Mackreth*, at p. 330.)

First, the *Mackreth* court explained, "the word 'willfully' is defined in the Penal Code, and its definition does not encompass a requirement of actual knowledge.  'The word "willfully," when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness *to commit the act*, or make the omission referred to.  It does not require any intent to violate law, or to injure another, or to acquire any advantage.'  (§ 7, subd. (1), italics added.)  A 'willingness . . . to commit the act'— resisting, delaying, or obstructing—does not by itself incorporate a requirement of 'actual knowledge.'  'The elements of crimes are of three varieties: actus reus, mens rea and attendant circumstances.'  (*People v. Jiminez* (1992) 11 Cal.App.4th 1611, 1624, fn. 7, disapproved on a different point in *People v. Kobrin* (1995) 11 Cal.4th 416, 419.)  Here, the act was resisting, delaying, or obstructing, willfully was the mens rea, and the status of the victim was an attendant circumstance.  A 'willingness to commit the act' does not require actual knowledge of every attendant circumstance."  (*Mackreth*, *supra*, 58 Cal.App.5th at pp. 330-331.)

Second, the court examined the legislative history of both section 148(a)(1) and section 69, a similar statute that criminalizes knowingly resisting an officer.  The two offenses had previously been contained in a single statute, but in 1872 the Legislature

divided them and adopted the original versions of sections 69 and 148.  (*Mackreth*, *supra*, 58 Cal.App.5th at p. 331.)  "By simultaneously enacting these two related statutes in 1872 and using 'willfully' to describe the required mental state for a section 148 offense but 'knowingly' to describe the required mental state for a section 69 resisting offense, the Legislature clearly expressed its decision to require *different* mental states for the two offenses.  [Citation.]  This is particularly true in light of the fact that the precursor to these statutes was a single statute that required both mental states.  Had the Legislature intended for the two offenses to have the same mental state, it would have used the same words in both statutes to describe the required mental states."  (*Mackreth*, at p. 331.)

Third, *Mackreth* found it significant that in 1997 the Legislature amended "section 148 to add subdivision (a)(2), which uses 'knowingly and maliciously' to describe the mental state required for the related offense of disrupting, impeding, or interfering with a police communication," providing "further evidence of the Legislature's recognition that 'willfully' in section 148, subdivision (a)(1) is not equivalent to actual knowledge.  (Stats. 1997, ch. 111, § 1, pp. 650, 651.)  If the Legislature had intended for the two required mental states to be equivalent, it would have amended section 148, subdivision (a)(1) to match the mental state specified in section 148, subdivision (a)(2).  By using different words to describe the required mental states in these adjacent parts of section 148, subdivision (a), the Legislature further demonstrated its intent that 'willfully' in section 148, subdivision (a)(1) did not mean 'knowingly.'"  (*Mackreth*, *supra*, 58 Cal.App.5th at pp. 331-332.)

Finally, the court noted the 1997 amendment to section 148 "took place long after [*Lopez*, *supra*, 188 Cal.App.3d 592] construed section 148, subdivision (a)(1) and found that it did not require actual knowledge." (*Mackreth*, *supra*, 58 Cal.App.5th at p. 332.) "The fact that the Legislature's 1997 post-*Lopez* amendment of section 148, subdivision (a) created a new offense that required actual knowledge while leaving unaltered section 148, subdivision (a)(1)'s 'willfully' requirement is another strong indicator that the Legislature did not intend for a section 148, subdivision (a)(1) offense to require actual knowledge." (*Mackreth*, at p. 332.)

The *Mackreth* court then addressed the decision in *A.L.* and expressly disagreed with it. "The cases upon which the *A.L.* opinion relied do not support its conclusion. *People v. Garcia*, *supra*, 25 Cal.4th 744 did not hold that 'willfully' always (or even usually) means actual knowledge. In *Garcia*, the court explained that 'the meaning of the term "willfully" varies depending on the statutory context.' (*Id*. at p. 753.) It was statutory context that drove the *Garcia* court's decision that the Legislature's use of the word 'willfully' in a statute criminalizing an omission was intended to import a requirement of actual knowledge into that statute. 'In a case like this, involving a failure to act, we believe section 290 requires the defendant to actually know of the duty to act. Both today and under the version applicable to defendant, a sex offender is guilty of a felony only if he "willfully violates" the registration or notification provisions of section 290. [Citation.] The word "willfully" implies a "purpose or willingness" to make the omission. (§ 7.) Logically one cannot purposefully fail to perform an act without

17

knowing what act is required to be performed.  As stated in *People v. Honig*[, *supra*,] 48 Cal.App.4th [at p.] 334, "the term 'willfully' . . . imports a requirement that 'the person knows what he is doing.' [Citation.]  Consistent with that requirement, and *in appropriate cases*, knowledge has been held to be a concomitant of willfulness.  [Fn. omitted.]'"  (*Id*. at p. 752, italics added.)  Thus, *Garcia* does not stand for the proposition that 'willfully' invariably means actual knowledge.  The court took great pains to distinguish between statutes criminalizing omissions, where actual knowledge was required, and those criminalizing affirmative acts, where it had previously concluded that '"willfulness" could include criminal negligence.'  (*Ibid*.)  *People v. Honig*, *supra*, 48 Cal.App.4th 289 similarly held that the meaning of 'willfully' depended on the context. (*Id*. at p. 334.)"  (*Mackreth*, *supra*, 58 Cal.App.5th at p. 333.)

"*In re Jerry R*., *supra*, 29 Cal.App.4th 1432 also did not hold that 'willfully' invariably means actual knowledge.  The issue in *Jerry R.* was whether a person who thought a firearm was unloaded could be found to have 'willfully' discharged a firearm. The *Jerry R.* court stated that 'the term "willful" requires only that the prohibited act occur intentionally.' (*Id*. at p. 1438.)  The court found that a person could not be found to have intentionally discharged a firearm if the person thought the firearm was not loaded, since an unloaded firearm could not be discharged.  (*Id*. at pp. 1437-1441.)  In *Jerry R*., unlike here, the perpetrator's mental state concerned the act—discharge—not an attendant circumstance, such as the status of the victim."  (*Mackreth*, *supra*, 58 Cal.App.5th at p. 334.)

18

Last, *Mackreth* noted "[t]he historical development of resisting arrest statutes in California was not addressed in the opinion in *A.L.* Therefore, the opinion in *A.L.* did not consider the Legislature's 1850 and 1872 enactments, its use of different language in the original versions of sections 148 and 69, or its 1997 post-*Lopez* choice to retain 'willfully' as the required mental state for a section 148, subdivision (a)(1) offense while creating a related offense in section 148, subdivision (a)(2) that expressly required actual knowledge." (*Mackreth*, *supra*, 58 Cal.App.5th at p. 334.)

Therefore, based on its "application of the rules of statutory construction and . . . review of the statute's legislative history," *Mackreth* held section 148(a)(1) "does not require actual knowledge," "respectfully disagree[d] with and declin[ed] to follow *A.L.*," and "reject[ed] defendant's claim that the trial court erred by instructing the jury with CALCRIM No. 2656 because the instruction did not require actual knowledge." (*Mackreth*, *supra*, 58 Cal.App.5th at p. 334.)

B. *Conclusion*.

We find the reasoning in *Mackreth* to be persuasive and adopt it as our own. Respectfully, we disagree with *A.L.* that the most natural reading of "willfully" is that a defendant charged with violating section 148(a)(1) "must have actual knowledge of the relevant facts," to wit, "actual knowledge he or she is resisting an officer in the performance of duty." (*A.L.*, *supra*, 38 Cal.App.5th at p. 22.) As indicated, *ante*, the courts have long concluded the term "willfully" is usually synonymous with "intentionally" (*In re Rolando S.*, *supra*, 197 Cal.App.4th at p. 941; see *People v. Davis*,

19

*supra*, 126 Cal.App.4th at p. 1435), and absent more, it simply means "the defendant's conduct must be intentional, not accidental. The defendant must know what he or she is doing *in the sense that his or her actions must be volitional*." (*People v. Zgurski*, *supra*, 73 Cal.App.5th at p. 263, italics added.) Moreover, we note that the near-universal adoption of the knowledge requirement from *Lopez*, *supra*, 188 Cal.App.3d 592, including the (at least implied) imprimatur given the rule by our Supreme Court in *Yount v. City of Sacramento*, *supra*, 43 Cal.4th at page 895, strongly counsels against adopting the contrary holding in *A.L.*

Among other reasons given for not following *Mackreth*, *supra*, 58 Cal.App.5th 317,[6] defendant rejects that court's conclusion the Legislature acquiesced in the interpretation given section 148 by *Lopez*, *supra*, 188 Cal.App.3d 592. (*Mackreth*, at p. 332.) Instead, defendant argues *In re Stanridge* (1937) 23 Cal.App.2d 95[7] "found actual knowledge was required for section 148(a)(1)," and the Legislature's failure in the

---

[6] We need not address them all. (*Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1264; *People v. Jackson* (2005) 129 Cal.App.4th 129, 165, fn. 114 ["[I]t is a long established rule that an appellate court need not 'set forth and dispose of, seriatim, each and every item which appellant's counsel chooses to characterize as an "issue" in the case.'"]; *People v. Garcia* (2002) 97 Cal.App.4th 847, 853 ["An appellate court is not required to address all of the parties' respective arguments, discuss every case or fact relied upon by the parties, distinguish an opinion just because a party claims it is apposite, or express every ground for rejecting every contention advanced by every party."].)

[7] Disapproved on another ground by *In re Smiley* (1967) 66 Cal.2d 606 at p. 614.

decades since to amend the statute to eliminate the element of actual knowledge demonstrates a legislative intent to mandate one.[8]

Not so. The issue presented in *Stanridge* was whether a magistrate erred by binding the defendant over for trial on a charge of violating section 148. (*Stanridge*, *supra*, 23 Cal.App.2d at p. 96.) The defendant argued the evidence presented at his preliminary examination did not establish probable cause to believe he was aware the persons he threatened with bodily harm were public officers seeking to enforce a county ordinance. (*Ibid*.) The appellate court disagreed, ruling the evidence "adequately discloses probable cause to believe that the accused person is guilty of resisting a public officer in the discharge of his duties by threatening him with violence and bodily harm if he attempted to enforce the Stanislaus ordinance to vaccinate the dairy cattle of one John Borba, and that the accused person then knew the threatened person was a public peace officer." (*Id*. at p. 97.)

The court in *In re Stanridge*, *supra*, 23 Cal.App.2d 95 was *not* squarely presented with the question of statutory interpretation whether section 148 includes an element of actual knowledge, and it patently *did not* hold it was. At most, *Stanridge* can be read to

---

[8] Our Supreme Court has warned the doctrine of legislative acquiescence merely raises an inference of passive approval, and what the Legislature has done, versus what was left undone, is a stronger barometer of legislative intent. (*People v. Morante* (1999) 20 Cal.4th 403, 429.) We agree with *Mackreth* that the 1997 amendment to section 148, during which an offence with a different mental state was *added* to the statute, while the offense set forth in subdivision (a)(1) and the interpretation given to it by *Lopez* was left alone, is one "strong indicator that the Legislature did not intend for a section 148, subdivision (a)(1) offense to require actual knowledge." (*Mackreth*, *supra*, 58 Cal.App.5th at p. 332.)

"*impl[y]* . . . that Penal Code section 148 requires a showing that a defendant must know that the person arresting him is an officer." (*Lopez*, *supra*, 188 Cal.App.3d at p. 597, italics added.) "'"It is axiomatic that language in a judicial opinion is to be understood in accordance with the facts and issues before the court. An opinion is not authority for propositions not considered."' [Citation.] 'An appellate decision is not authority for everything said in the court's opinion but only "for the points actually involved and actually decided."'" (*People v. Knoller* (2007) 41 Cal.4th 139, 154-155.) Therefore, we decline to give the decision in *Stanridge* the weight defendant accords it.[9]

In sum, we agree with *Mackreth* that section 148(a)(1) does not require the defendant have actual knowledge they are resisting, delaying, or obstructing a police officer. It is sufficient for a jury or trier of fact to find the defendant knew *or* reasonably should have known the person they resisted was a police officer.

---

[9] As a measure of its near total obscurity, *In re Stanridge*, *supra*, 23 Cal.App.2d 95 has only been cited in appellate decisions *four* times in 87 years—once by *Lopez*, and three times on unrelated questions of habeas corpus procedure.

III.

DISPOSITION

The judgment is affirmed.

CERTIFIED FOR PUBLICATION

McKINSTER
Acting P. J.

We concur:

CODRINGTON
J.

RAPHAEL
J.